PAUL J. WILHELM *v.* CORNELIUS ROE ET AL.

[No. 15, January Term, 1930.]

*Decided March 12th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE,. and SLOAN, JJ.

*William P. Cole, Jr.,* and *William Lentz,* with whom were *France, McLanahan & Rouzer* on the brief, for the appellant.

*Cornelius V. Roe* and *T. Lyde Mason, Jr.,* with whom was *Elmer J. Cook* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County, in equity, overruling the exceptions of Paul J. Wilhelm, the appellant, to the allowance of the mechanics' lien claims of the Stebbins-Anderson Coal & Lumber Company and Thomas B. Newcomb, in the auditor's account in the case of Cornelius V. Roe, assignee, against the Southland Company, in which proceedings five lots of ground, mentioned and described therein, were sold under a clause contained in a mortgage, executed on March 8th, 1927, by the Southland Company to the Oakmont Realty Company, to secure a loan of $20,000. The loan was made to the Southland Company and secured by said mortgage, to enable that company to build, or have built, a house on each of said lots of ground. In pursuance of the agreement between the mortgagor and mortgagee, the money so loaned to the Southland Company was paid over to John H. Morgan, trustee, to be disbursed by him as the building progressed. As disclosed by the record, the work upon the construction of the houses started in March, 1927, and on March 26th, thereafter, the Stebbins-Anderson Coal & Lumber Company made its first delivery of lumber and material upon the premises, to be used in the building of said houses, and continued to make deliveries thereafter until they had delivered lumber and material to the amount of at least $8,649.25, which amount, with interest, is still owing to it.

On August 20th, 1927, the Southland Company leased unto the Home Building & Contracting Company for the

term of ninety-nine years the said five lots of grounds, and on the same day it conveyed the reversionary interest in said lots of land unto the appellant, Paul J. Wilhelm.

On March 23rd, 1928, its claim not having been paid, the Stebbins-Anderson Coal & Lumber Company filed a mechanic's lien against said five lots of ground, naming the Home Building & Contracting Company as the owner, or reputed owner; and on February 28th, 1928, Thomas B. Newcomb, the other appellee, filed his mechanic's lien against three of said lots, for work done and materials furnished in painting the houses thereon, naming the Southland Company and Allen L. Rains as the owners, or reputed owners, of said lots.

After the ratification of the mortgage sale, petitions were filed by the Stebbins-Anderson Coal & Lumber Company and Thomas B. Newcomb, on the 29th day of January, 1929, and the 4th day of February, 1929, respectively, alleging therein that the proceeds of such sale were largely in excess of the amount required to pay the mortgage debt, interest, and costs, and asked therein that such surplus be applied to the payment of their claims.

The audit was made and filed on the 4th day of February, 1929, allowing said claims, but, before its final ratification, the appellant, Paul J. Wilhelm, on February 7th, 1929, filed exceptions to the allowance of the claims of both the Stebbins-Anderson Coal & Lumber Company and Thomas B. Newcomb, alleging therein that the mortgaged property had been leased on August 20th, 1927, by the Southland Company to the Home Building & Contracting Company for the term of ninety-nine years, and that the reversionary interest therein had, on that day, been conveyed to him; that the claim of the Stebbins-Anderson Coal & Lumber Company was not a valid lien against his interest in said property, and that he, as such grantee, was entitled to have said surplus paid over to him, and a like allegation was made as to the claim of Thomas B. Newcomb.

Upon the petition of the Stebbins-Anderson Coal & Lumber Company, filed on April 24th, 1929, the mechanics' lien,

as stated by the court in his opinion, was amended so as to include the names of the Southland Company and Paul J. Wilhelm, as the owners of the property mentioned in these proceedings.

We will first consider and pass upon the action of the court in ratifying the audit in respect to the claim of the Stebbins-Anderson Coal & Lumber Company.

The contention is made by the appellant, Paul J. Wilhelm, that the mechanic's lien claim of the Stebbins-Anderson Coal & Lumber Company is invalid because the materials mentioned in the lien claim was not furnished by the company upon the authorization or contract of the owner, the Southland Company, or Paul J. Wilhelm, or with any agent of the owner, and, this being true, the Stebbins-Anderson Coal & Lumber Company gave no notice to the owner of the property against which the lien claim was filed of its intention to file such lien, as required by section 11 of article 63 of the Code, which provides: "If the contract for furnishing such work or materials or both, shall have been made with any architect or builder, or any other person except the owner of the lot on which the building may be erected, or his agent, the person so doing work or furnishing materials, or both shall not be entitled to a lien unless, within sixty days after furnishing the same, he or his agent shall give notice in writing to such owner or agent, if resident within the city or county, of his intention to claim such lien."

The question thus to be determined is by whose authority or upon whose contract or agreement was the material furnished by the Stebbins-Anderson Coal & Lumber Company.

The Southland Company, with J. Elmer Weisheit as its president, had for years, prior to the transactions here involved, been engaged in the development of real estate in and around the City of Baltimore. The Stebbins-Anderson Coal & Lumber Company, of Towson, Baltimore County, had on previous occasions furnished materials to the Southland Company in other work done by it, and, upon learning of the contemplated improvements to be made upon the property here involved, M. B. Shearman, sales manager and secretary

of the Stebbins-Anderson Coal & Lumber Company, called upon Mr. Weisheit, president of the Southland Company, with the view of selling to him or his company material to be used in the erection of the proposed buildings, and, as testified to by Shearman, Weisheit told him "they were going to construct five houses in Southland Hills, and I asked him if they (we) could give him prices on them, and he said, yes, and when he was ready, he furnished a list for the lumber and a set of plans and we gave him a price on the lumber and a price on the millwork for the five houses," and these prices were accepted by Weisheit, and the material when delivered was charged to the Southland Company. Shearman further testified that, upon his first visit to Weisheit, he was told by him that he was undecided whether the houses would be built by him or his company, or by some one else, "and as far as I can remember that was not decided until the last minute," when Mr. Weisheit said "to keep this straight, * * * charge that account to the Home Building Company," a company, which, at that time, existed only in the minds of Weisheit and one Rains, a carpenter, who for several years had done work for the Southland Company, and who was to do the work upon the buildings then to be erected. The witness, when asked, said at that time he knew neither the Home Building Company nor Rains; his negotiations, he said, were with Weisheit.

The Home Building & Contracting Company came into existence through the efforts of Mr. Weisheit, for, in his testimony, he states, "Mr. Rains had a judgment or two judgments against him, and therefore he did not want to involve this transaction or have it affected by these judgments * * * and he asked that we incorporate this company for him," which was done, though there was a delay of "three, four or five months," resulting from the selection of the name "The Home Building Company," which was found to be the name of an existing corporation. And although Weisheit looked after and directed the incorporation of the Home Building & Contracting Company, he seemed to know little or nothing about it after its incorporation, more than the

fact that Rains was its president, and that neither he nor the Southland Company had any connection with it.

Henry Russo, who was employed by the Stebbins-Anderson Coal & Lumber Company, in the capacity of credit man, bookkeeper, and treasurer, testified that the original estimate for the materials, made by Mr. Shearman on February 4th, 1927, as shown by it, was for the Southland Company, and was later changed to the Home Building Company. He further testified that "about December 15th, 1927, I called Mr. Weisheit of the Southland Company, in reference to payment on the five houses in Southland Hills, that we had delivered the material on and he, at that time, told me that just as soon as the houses were completed that he would see if he could not arrange to get me some money. Then time elapsed for about a month and didn't get any response from Mr. Weisheit. I called him again and at this time I told Mr. Weisheit that if I did not get some money I would have to prepare my papers to file a lien against the property." This last conversation "was about the first week in January and he, at that time, told me to hold off, that as soon as the houses were completed if he didn't have them sold, he was going to refinance and pay us, and I didn't hear from him for a period of another month and about * * * the first week in February, I again called him up, and this time, he could not give me any definite answer as to the money," whereupon he immediately proceeded to prepare the papers for the filing of the lien. On cross-examination he testified that, at the time the change was made upon the books of the company from the Southland Company to the Home Building Company, the majority of the material furnished had been delivered.

Allen L. Rains testified that his understanding was that $3,325 of the construction loan was to be used in the erection of each of the houses, the estimated cost of which was $7,000, and, as stated by him, "when the houses were completed and sold, I was to get the profit out of them the same as if I was building them for myself." The cash amount available for investment in the houses being so much less than the amount required to build them, Rains was asked

where he was to get the material, and he said from "Stebbins-Anderson to do the building. Q. Who told you that? A. That was led up to in the conversation with Mr. Weisheit, that the material was to be furnished by Stebbins-Anderson, I was told to go out and see Mr. Shearman." This was after the visit of Mr. Shearman to Mr. Weisheit. Thereafter the material was ordered by witness as it was needed for the building.

Mr. Weisheit, president of the Southland Company, testified that the material and lumber furnished by the Stebbins-Anderson Coal & Lumber Company was not ordered and received by him or the Southland Company, nor was it furnished upon any agreement or contract made with either him or the Southland Company, nor was any notice given to either of them by the Stebbins-Anderson Coal & Lumber Company of its intention to file a mechanics' lien against the property mentioned in these proceedings. Weisheit also testified that the said sum of $3,325 was "supposed to be adequate for the purpose of getting the buildings thereon," that is, upon the land, though not sufficient to pay for all the lumber required to build them; as stated by him, the idea was that the large bills, like that of Stebbins-Anderson Coal & Lumber Company, were to await payment until the houses were completed and sold, or if not sold, refinanced. He was then asked, "If any refinancing, you would pay off the construction mortgage and put a new mortgage on the premises," and he answered, "Yes."

The record discloses that, before the houses were completed, they were leased for ninety-nine years to the Home Building and Contracting Company, and the reversionary interest therein conveyed to Wilhelm, an employee of the Pen Mar Company, to secure an existing indebtedness owing to that company, amounting to $18,000, for materials furnished exclusively upon other jobs of the Southland Company, no part of it being for materials used in the construction of these houses. It was conveyed to Wilhelm and not to the Pen Mar Company, to which the indebtedness was

owing, because, as stated by Wilhelm, "I talked it over with Mr. Weisheit and we thought it better be put in my name rather than the Pen Mar Company, because the rest of the creditors might be shown something." Wilhelm also testified that the deed from the Southland Company to him was received and held as security for the amount owing by the Southland Company to the Pen Mar Company, and, when this debt was paid, the property would be reconveyed to the Southland Company.

It was upon the evidence stated above that the learned court below reached the conclusion that the lumber furnished by the Stebbins-Anderson Coal & Lumber Company was furnished upon the authority of the Southland Company, and pursuant to an agreement or contract made by it with the Stebbins-Anderson Coal & Lumber Company, and that it was not furnished upon a contract made with the alleged builder, the Home Building & Contracting Company, or with any person other than the owner of the property, the Southland Company.

After a thoughtful and careful consideration of the evidence, we cannot say there was error in the conclusion of the court, who saw and heard the witnesses testify in the case, and who was thereby afforded an opportunity to pass upon the credibility of the witnesses and truthfulness of their testimony. It is not denied that Shearman called upon Weisheit, soliciting sale of material to him or his company, to be used in the erection of the houses in question, and, as stated by Shearman, Weisheit was asked if he (Shearman) could furnish him with prices on lumber, and he was told that he could. Later, when the material was needed, the prices were furnished to Weisheit, who accepted them, and thereafter the material was delivered and charged upon the books of the Stebbins-Anderson Coal & Lumber Company to the Southland Company, when later, at the suggestion of Weisheit, in order to keep his account straight with the Stebbins-Anderson Coal & Lumber Company on other jobs, the material was charged upon the books of the Stebbins-Anderson Coal & Lumber Company to the Home Building Company; but it

can hardly be said that, in doing so, the Stebbins-Anderson Coal & Lumber Company released, or intended to release, the Southland Company from liability, and look only to the Home Building Company, as it may well be inferred from the record that that company was irresponsible and entitled to little or no credit. It was, in fact, incorporated for the sole purpose of protecting Rains from the effect of two judgments against him, and to prevent the enforced payment of those judgments by his creditors. It is true that Weisheit made the general denial stated above, but he, though first upon the stand, was not recalled, and did not deny the specific statement of Shearman as to his visit and submission to him of prices of the material to be used in the construction of the houses, and the acceptance of those prices by him, and other facts related by Shearman in his detailed conversation with Weisheit on the occasion of his visit, but contended himself with such general denial.

Weisheit knew that these buildings could not be built for $3,325, and, as he said, the larger bills for material were to be paid when the houses were completed and sold, and yet, before they were completed, they were leased to the Home Building & Contracting Company, a company which seems to have been more or less discredited by the parties, and the reversionary interest therein conveyed to an existing outstanding creditor, who had furnished none of the material used in said houses, in violation of the alleged plan or idea that those furnishing material should be paid from the proceeds of the sale of the property.

In support of Shearman, Russo testified that the material was first charged to the Southland Company and subsequently charged as already stated. After the material had been delivered, he called upon Weisheit for the payment of the money therefor, and was met with promises that he would later arrange for its payment, which he never did, without disclosing to Russo that he, or his company, should look to another for its payment. In addition to this, the evidence of Shearman is further supported by the testimony of Rains,

who stated, when asked by whom the necessary material to complete the houses was to be furnished, that it was to be furnished by Stebbins-Anderson Coal & Lumber Company, and that he was so told by Weisheit, president of the Southland Company, and was, by the latter, told to see Mr. Shearman, which he did, and the material was thereafter delivered.

As the contract or agreement for the materials furnished was made with Weisheit, president of the Southland Company, no notice to it, as owner, of the intention of filing a mechanics' lien, was required under section 11 of article 63 of the Code. *First National Bank v. White* 114 Md. 615.

The material, when furnished by the Stebbins-Anderson Coal & Lumber Company, conferred upon it a right to a lien upon the property not to be defeated, if the provisions of the statute were followed in the consummation of the lien. Section 14, article 63, of the Code.

The fact that the property was thereafter leased or sold, or an encumbrance placed thereon, did not affect the right of the Stebbins-Anderson Coal & Lumber Company to its lien. Section 15 of article 63 of the Code.

The Home Building & Contracting Company and not the Southland Company was named as owner or reputed owner of the lots of land, because, as shown by the record, those filing the lien were influenced by the fact that, at the time of filing it, the property had been leased to the Home Building & Contracting Company.

The statute uses the expression, owner or reputed owner of the property, rather indicating that exactness is not required in stating the ownership of the property, and if, in this case, the ownership was improperly stated, and the Southland Company should have been named as the owner or reputed owner of the property, then in our opinion, under the broad provisions of the statute providing for amendments, it was proper to allow the amendment here made. Section 41 of article 63 of the Code.

As to the claim of Newcomb, we cannot find in the evidence that the work done and material furnished by him was upon a

contract or agreement made with the Southland Company, the owner of the property, for, as he testified, all negotiations for such work and material were with Rains, and not with the Southland Company. The only fact upon which he relies, in connecting that company with the transaction, was that on one occasion he called at its office, where Rains was frequently to be found, and Weisheit paid him three dollars on his claim. It is true that he said that the company had paid him amounts thereon, on other occasions, but as to these payments he could not speak with any degree of positiveness; and Weisheit said that he may have made to Newcomb such payments, but he could only recall the one of three dollars, and this he said he paid him for Rains, upon the statement made by Newcomb, that he was "hard up" and needed the money. These facts we think fail to show that the material furnished and the work done by Newcomb were done and furnished under an agreement or contract made with the Southland Company, for which reason, the court, we think, erred in allowing his claim to be paid out of the proceeds of the sale of the property, and we will reverse the order of the court in respect to the allowance of his claim.

> *Order affirmed in part and reversed in part, and case remanded that an order may be passed in conformity with this opinion; the appellant to pay the costs.*