634 A.2d 39

**YORK ROOFING, INC. et al.**

v.

**Dale W. ADCOCK et al.**

**No. 27, Sept. Term, 1993.**

Court of Appeals of Maryland.

Dec. 10, 1993.

Richard B. Talkin (Johathan E. Greenstein, Richard B. Talkin, P.A.), on brief, Columbia, for petitioner.

Jeffrey B. Fisher of Camp Springs (R. Bradley Runyan, Washington, DC), on brief, for respondent.

Michael N. Russo, Jr. (Thieblot, Ryan, Martin & Ferguson) on brief, Baltimore, amicus curiae.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

We issued a writ of certiorari in this case, 330 Md. 458, 624 A.2d 954, to determine whether, under our Mechanics' Lien Law, Maryland Code (1974, 1988 Repl.Vol.), §§ 9–101 through 9–114 of the Real Property Article, a potential lienor's right to establish its lien terminates when the property improved by its labor and materials is sold to a bona fide purchaser within the 180 day period allowed under the law for the potential lienor to file its petition for the lien. We shall hold that such a bona fide purchaser takes free of all mechanics' liens not established before equitable title passes.

I

This appeal is from the denial of petitions for a mechanics' lien by two subcontractors that supplied labor and materials in the construction of a commercial building on property located in Anne Arundel County. On September 28, 1990, Richard E. Polm, the record owner of the Anne Arundel County property, entered into a contract with Commerce Park, Ltd., a construction company owned and operated by Polm, to construct a new office and warehouse building on that property. Polm had previously entered a lease agreement for that property in July of 1990 with W.W. Adcock Co., Inc., a corporation owned and operated by Dale W. Adcock and Carson Dee Adcock. The lease provided that a building would be constructed on the property and the Adcocks' corporation would be the sole tenant. The building was to be "built to suit" the specific needs of the Adcocks and their company. York Roofing, Inc. (York) and Central Air Conditioning Contractors, Inc. (Central Air), the petitioners, were two of the many subcontractors that provided labor and materials in the course of construction pursuant to contracts with the general contractor, Commerce Park, Ltd.

York installed a roof, roof insulation, and architectural sheet metal coping for the entire building, according to plans and specifications supplied by Polm or his construction company. The work began on or about November 29, 1990, and ended on January 8, 1991. The contract price for the job totalled $56,173.62, none of which was paid at the time of completion.

Likewise, Central Air installed an air conditioning system for the entire building, according to plans and specifications supplied by Polm or his construction company. Its work began on or about November 12, 1990, and ended on January 18, 1991. The total contract price for the job was $31,280, none of which was paid at the time of completion.

On December 10, 1990, Polm and the Adcocks entered into a contract for the sale to the Adcocks of the property, together with the building, which was still under construction. That contract specifically provided that the building was to be constructed in accordance with the plans and specifications that were initialed by the parties and attached to the contract. Both York and Central Air completed a portion of their work on the building after the date of that contract. Settlement on the contract took place on February 20, 1991.

At settlement, there were nine unpaid subcontractors listed on the memorandum of settlement, whose claims were paid out of the proceeds of the sale. Neither York nor Central Air were on the list. The parties have stipulated that notices of intent to establish a mechanics' lien were mailed to the Adcocks by certified mail, return receipt requested. York's notice was served upon the Adcocks on April 3, 1991; Central Air's notice was served on April 15, 1991. Petitions to establish and enforce mechanics' liens were filed in the Circuit Court for Anne Arundel County by York on July 5, 1991, and by Central Air on July 15, 1991. On November 27, 1991, a hearing was held to determine Appellees' entitlement to their respective mechanics' liens. The court denied both petitions for the liens. The Court of Special Appeals affirmed those judgments in an unreported opinion.

## II

We begin our analysis by reviewing the background of our current Mechanics' Lien Law. Before 1976, the Maryland Mechanics' Lien statute operated to create a lien that attached to the property as soon as the work was performed or materials supplied and lasted until the expiration of 180 days after the work had been finished or materials furnished, even if no contract action had been filed in court. *Barry Properties v. Fick Bros.*, 277 Md. 15, 19, 353 A.2d 222, 225–26 (1976). If a laborer or material supplier was a subcontractor, however, it was not entitled to a lien unless, within 90 days after furnishing the work or materials, it gave written notice to the owner of its intention to claim a lien. *Id.* at 19–20, 353 A.2d at 226. The purpose of this notice by the subcontractor was to inform the property owner that a lien might be claimed so that the owner could retain from the cost of the building the amount that the owner ascertained to be due to the subcontractor. *Id.* at 20, 353 A.2d at 226. The statute further provided that if either a subcontractor (who gave the requisite notice) or a general contractor had not been paid and desired to retain a mechanics' lien, it was required to file within 180 days a claim with the clerk of the circuit court of the county where the property was located, at which time the lien would be recorded on a special "Mechanics' Lien Docket." *Id.* Once filed with the clerk, the lien subsisted for one year from the date of its filing unless within that period the claimant commenced a proceeding to enforce it, in which case the lien was stayed until the proceeding concluded. *Id.* During that period, however, the owner of the property subject to the lien, or any other person interested in it, could bring proceedings in equity to compel the claimant to prove the validity of the lien or have it declared void. *Id.* In the alternative, with court approval, the owner could release its property from the lien by posting bond. *Id.* If a claimant prevailed in proceedings to enforce its lien, the court would order a sale of the property to pay the claimant unless the amount found to be due was paid by a specified date. *Id.* at 20–21, 353 A.2d at 226.

In *Barry Properties, supra,* however, this Court held that the Mechanics' Lien Law as then formulated was incompatible with the due process clauses of the Fourteenth Amendment and then Article 23 of the Maryland Declaration of Rights. (Re-adopted and renumbered as Article 24, ch. 681 of the Acts of 1977, ratified Nov. 7, 1978). The Court reasoned that the imposition of a mechanics' lien involves state action, 277 Md. at 22, 353 A.2d at 227, and that the lien deprived an owner of a significant property interest. *Id.* at 24, 353 A.2d at 228. The Court therefore held that the statute allowed prejudgment seizure of significant property interests without notice, prior hearing, or other sufficient procedural safeguards. *Id.* at 31, 353 A.2d at 232.

The *Barry Properties* Court concluded, however, that it was possible to sever the unconstitutional provisions of the Mechanics' Lien Law, yet still preserve enough of the law to fulfill the legislative intent, stating:

"We think that this can be accomplished by excising that portion of the statute which purports to create a lien from the time work is performed or materials furnished to the time a lien is established by judicial determination in a proceeding sufficient with respect to due process. We therefore hold that under the current statute there can be no existing lien on property until and unless the claimant prevails either in a suit to enforce the claimed lien or in some other appropriate proceeding providing notice and a hearing (*i.e.,* a declaratory judgment action). What the claimant, be he a general contractor or subcontractor, possesses up to that point in time is a chose in action. Under this ruling, we believe, the statute continues to effectuate the primary legislative intent, yet the owner is not deprived of a significant property interest without due process since the owner's interest is not impinged upon until after he is provided with notice and an opportunity for a hearing. It follows that § 9–107(b), to the extent that it grants mechanics' liens 'priority over any mortgage, judgment, lien or encumbrance attaching to the building or ground subsequent to the commencement of the building' but prior to the

time the lien is established by a judicial determination, is also null and void since to hold otherwise would permit contractors to seize with their left hand what we have said they cannot grasp with their right."

277 Md. at 36–37, 353 A.2d at 235. (footnotes omitted).

The General Assembly reacted to the *Barry* decision by enacting emergency legislation that was signed by the Governor on May 4, 1976. Ch. 349 of the Acts of 1976. As now codified, Md.Code (1974, 1988 Repl.Vol.), § 9–102 of the Real Property Article provides in relevant part:

(a) *Buildings.*—Every building erected and every building repaired, rebuilt, or improved to the extent of 25 percent of its value *is subject to establishment of a lien* in accordance with this subtitle for the payment of all debts, without regard to the amount, contracted for work done for or about the building and for materials furnished for or about the building, including the drilling and installation of wells to supply water, the construction or installation of any swimming pool or fencing, the sodding, seeding or planting in or about the premises of any shrubs, trees, plants, flowers or nursery products, and the grading, filling, landscaping and paving of the premises. [emphasis added]

\* \* \* \* \* \*

(d) *Exemptions.*—However, a building or the land on which the building is erected may not be subjected to a lien under this subtitle if, prior to the establishment of a lien in accordance with this subtitle, legal title has been granted to a bona fide purchaser for value.

(e) *Filing of petition constitutes notice to purchaser.*— The filing of a petition under § 9–105 shall constitute notice to a purchaser of the possibility of a lien being perfected under this subtitle.

Thus, the post-*Barry Properties* law has preserved the right of a creditor for labor or materials to proceed *in rem* against the improved property even though there was no privity of contract between the creditor and the owner, nor any personal liability of the owner to the creditor. *Himmighoefer v. Me-*

*dallion Industries Inc.,* 302 Md. 270, 277, 487 A.2d 282, 286 (1985). The lien law was otherwise radically changed, however. Under the new law, the claimant has no lien until he has gone to court and has made the necessary showing to the court to establish the lien. § 9–106 of the Real Property Article.

In *Himmighoefer,* we considered the effect of a lien petition filed between the time of the execution of the contract of sale for the property improved by the lien claimant and the conveyance of legal title thereto at settlement on the sale. A subcontractor, Medallion Industries, Inc. (Medallion), had furnished labor and materials on two sites in a residential subdivision in Prince George's County. The work was performed between May and September of 1981 pursuant to a contract with the general contractor for the project. Subsequent to completion of all of the work by Medallion, the owner, Ridgely Builders, Inc. (Ridgely), contracted to sell one lot with improvements to Mr. and Mrs. Gary Himmighoefer on November 17, 1981, and another improved lot to Robert Holmes on November 24, 1981. On December 23, 1981, Medallion filed a petition in the Circuit Court for Prince George's County to establish mechanics' liens against each lot. Ridgely was the only named defendant. On December 31, 1981, Ridgely conveyed to the Himmighoefers the improved lot it had sold to them, and on January 8, the lot sold to Holmes was conveyed by Ridgely to Holmes. Ridgely did not respond to the show cause order on the petition to establish the mechanics' liens, and consequently a default decree was passed and liens entered on February 2, 1982. The Himmighoefers and Holmes learned of the mechanics' liens against their properties when they were advertised for sale. They intervened in the proceedings. The trial court vacated the default decrees entering the liens but thereafter granted Medallion's motions for summary judgment and directed that mechanics' liens be entered against both properties. Reversing those judgements, we held that the interests of the purchasers who acquired equitable title to land prior to the establishment of mechanics' liens could not be reached by the mechanics' liens. Under the

doctrine of equitable conversion [1], the purchasers acquired equitable title to the properties when they contracted with Ridgely to buy them. 302 Md. at 278, 487 A.2d at 286. *See also Coe v. Hays*, 328 Md. 350, 357–58, 614 A.2d 576, 579–80 (1992); and *Reisterstown Lumber Co. v. Tsao*, 319 Md. 623, 630, 574 A.2d 307, 310–11 (1990).

The *Himmighoefer* Court went on to discuss the effect of the petitions to establish mechanics' liens, which were filed after the contracts of sale but before passage of legal title at settlement:

> "Medallion is of the view that the filing of its petition to establish a mechanics' lien gave constructive notice to the appellants and thus somehow established a claim against their lots. At·best, this action could place Medallion in no better position than that which would have prevailed had it obtained a judgment against the seller between the time of the contracts of sale and the passing of the deeds. Unlike the situation which prevailed under the "old" law, there is no mechanics' lien under the "new" law until the passage of a court order establishing that lien. The lien exists purely by virtue of statute. . . . At common law a creditor had no remedy against the lands of his debtor. Judgments create liens only because the land is made liable by statute to be seized and sold on execution." (citations omitted.)

302 Md. at 278, 487 A.2d at 286.

We concluded in *Himmighoefer* by pointing out:

---

1. " 'The legal cliche, that equity treats that as being done which should be done, is the basis of the theory of equitable conversion. Hence, when the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes the owner of the land, the vendor of the purchase money. In equity the vendee has a real interest and the vendor a personal interest. Equity treats the executory contract as a conversion, whereby an equitable interest in the land is secured to the purchaser for whom the vendor holds the legal title in trust. This is the doctrine of equitable conversion.' " *Himmighoefer v. Medallion Industries, Inc.*, 302 Md. at 278, 487 A.2d at 286 (quoting 8A Thompson, *Real Property*, § 4447 at 273–74 (Grimes Repl. Vol.1963)).

"Appellants [the purchasers] were vested with equitable title prior to the filing of the petition for a mechanics' lien. That petition could create no lien because a lien only comes into being upon court order. We are not obliged to consider whether the appellants were bona fide purchasers within the meaning of § 9–102(d) nor are we obliged to consider the effect of § 9–102(e) pertaining to notice because equitable title vested in the appellants prior to the docketing of the suit to establish the mechanics' liens. Appellants' position as to the entry of a mechanics' lien is no worse than it would have been had a judgment been entered against the seller between the time of the execution of the contracts of sale and the passage of a deed. The fact that a mechanics' lien is a specific lien in rem and a judgment is a general lien makes no difference. The interest of the appellants in the land in question could not be reached by the mechanics' liens."

302 Md. at 281, 487 A.2d at 287–88.

### III

■ Section 9–105 governs the filing of mechanics' liens claims. Subsection (a) provides in part:

"(a) In order to establish a lien under this subtitle, a person entitled to a lien shall file proceedings in the circuit court for the county where the land or any part of the land is located within 180 days after the work has been finished or the materials furnished. The proceedings shall be commenced by filing with the clerk, the following: ...."

Petitioners in the instant case argue that they were entitled to rely upon the availability of the full 180 day statutory period within which to perfect their mechanics' liens against the property, even though both equitable and legal title were transferred to the Adcocks during that 180 day period. We disagree. The 180 day period stated in § 9–105(a) is a time limitation within which the mechanics' lien claimant must file a petition to establish a lien. It is true that claimant may file its petition to establish a lien during the 180 day period, but only

so long as the property itself is subject to a lien. Once equitable title has been transferred to a bona fide purchaser for value, however, the property is no longer subject to a lien. *Himmighoefer*, 302 Md. at 281, 487 A.2d at 287–88.

■ York and Central Air next assert that since the Adcocks were the equitable owners of the property while a portion of the labor and materials were furnished by them as subcontractors, the Adcocks were therefore owners of the property being improved within the meaning of our mechanics' lien statute. Again we disagree.

■ As we noted in Part II, *supra*, our Mechanics' Lien Law provides a remedy to unpaid contractors or subcontractors who furnish labor or materials in the improvement of real property by permitting them to establish a lien upon the property improved. The plain meaning of the language employed by the General Assembly in enacting the Mechanics' Lien Law refutes the petitioners' assertion. Section 9–101 provides:

"(a) *In general.*—In this subtitle the following words have the meanings indicated.

(b) *Building.*—"Building" includes any unit of a nonresidential building that is leased or separately sold as a unit.

(c) *Contract.*—"Contract" means an agreement of any kind or nature, express or implied, for doing work or furnishing material, or both, for or about a building as may give rise to a lien under this subtitle.

(d) *Contractor.*—"Contractor" means a person who has a contract with an owner.

. . . .

(f) *Owner.*—"Owner" means the owner of the land except that, when the contractor executes the contract with a tenant for life or for years, "owner" means the tenant.

(g) *Subcontractor.*—"Subcontractor" means a person who has a contract with anyone except the owner or his agent."

These provisions clearly exclude the Adcocks as owners within the contemplation of the Mechanics' Lien Law since they

entered no contract with Commerce Park, Ltd. for the improvement of the property which they subsequently purchased. The only contracts which York and Central Air entered for furnishing labor and materials were with Commerce Park, Ltd., and there is no evidence that it was acting as an agent of the Adcocks. Consequently, the Adcocks' property was not subject to a mechanics' lien under the statute. *Greenway v. Turner,* 4 Md. 296, 304 (1853) (The liability of the owner under the mechanics' lien law is created not by act of the party, but by law, and must rest solely upon the terms of the law, one of which is that there must be an active subsisting contract between the builder and the owner, before the latter can be made responsible for materials furnished to the former.).

 Finally, York and Central Air submit that the Adcocks were not bona fide purchasers for value because their corporation was a tenant of the property prior to December 10, 1990, when they contracted to buy it, and because they contracted to buy the property together with a building to be completed in accordance with agreed plans and specifications. Consequently, petitioners posit that the Adcocks were on notice of their work on the building and that they may not have been paid for their labor and material. The short answer to this contention is that the trial court found as a fact that the Adcocks were not aware that York and Central Air had not been paid for the labor and materials they furnished in the construction of the building. That finding was supported by substantial evidence and will not be disturbed on appeal. Maryland Rule 8–131(c). Even assuming, however, that the Adcocks had knowledge that York and Central Air had not been paid for their labor and materials, that knowledge, without more, would be insufficient to expose them to a lien established after equitable title to the property had passed to them. Petitioners' contention to the contrary overlooks the curtailed remedy now provided laborers and material suppliers under the post-*Barry Properties* Mechanics' Lien Law. Since York and Central Air never established a lien, they were possessed of a mere chose in action when equitable

title passed to the Adcocks. Thus, as in the case of a judgment rendered against the seller after equitable title to real estate passed to the buyer, notice of the claim on which that judgment was based would not prevent the buyer's equitable title from being insulated from any lien of the judgment. *Caltrider v. Caples,* 160 Md. 392, 394, 153 A. 445, 446 (1931) (equitable interest of the buyer took precedence over judgment creditor of seller where that judgment was rendered after equitable title passed, notwithstanding the fact that buyer was aware of the claim against seller on which the judgment was grounded). For all of the above reasons, the equitable interests of the Adcocks in the property they bona fide contracted to buy for a valuable consideration could not be encumbered by a mechanics' lien by York and Central Air because of Commerce Park's failure to pay them for the labor and materials they furnished as subcontractors.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.