705 A.2d 40

**WOLF ORGANIZATION, INC.**

v.

**Michael T. OLES, et al.**

**No. 306, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Jan. 28, 1998.

358

Gerald J. O'Brien, Gaithersburg, for appellant.

Teresa K. LaMaster (Robert R. Bowie, Jr. and Bowie & Jensen, LLC, on the brief), Towson, for appellees.

Argued before HOLLANDER, SALMON and BYRNES, JJ.

BYRNES, Judge.

In this case, we are called upon to decide whether one who executes a contract with an owner/builder to purchase real property improved by a dwelling to be constructed during the executory period is an "owner" of the property, whose equitable interest may be reached by a mechanics' lien, under the Maryland Mechanics' Lien Statute, Md.Code, (1976, 1996 Repl.Vol.), §§ 9–101 through 9–114 of the Real Property Article ("R.P.").

Appellant Wolf Organization, Inc., trading as "The Lumber Yard" ("Wolf"), filed a petition in the Circuit Court for Carroll County to establish and enforce a mechanics' lien against property known as 3839 Dakota Road. The petition was filed after the property, including a newly constructed single-family residence, had been conveyed in fee simple to appellees Michael T. Oles and Kathleen C. Hilbert, who were named as defendants. The circuit court denied Wolf's petition. On appeal, Wolf presents the following questions for review, which we have rephrased slightly:

I.   Whether the trial court erred in ruling that Oles and Hilbert, as contract purchasers, were not "owners" of the property, within the meaning of Section 9–101(f) of the Mechanics' Lien Statute.

II. Whether the trial court erred in determining that service of a notice of intention to claim mechanics' lien upon Oles, when he was an equitable owner but not a legal owner of the property, did not comport with Section 9–104(a) of the Mechanics' Lien Statute.

We hold that the lower court correctly ruled that Oles and Hilbert were not "owners" of the property within the meaning of the Maryland Mechanics' Lien Statute, and that their equitable interest in the property, and hence the property itself, was not subject to a mechanics' lien. Although the circuit court erred in determining that Wolf did not comply with the notice requirement of Section 9–104 of the Mechanics' Lien Statute, that error was harmless, as § 9–104 did not apply to the claim before it. Accordingly, we affirm the court's denial of the petition to establish mechanics' lien.

## FACTS

On June 14, 1995, Marsar Development Corporation, trading as Wyatt Homes ("Wyatt"), purchased a tract of land in Carroll County, Maryland, comprising Lots 51 through 84 of "Shiloh Run," a planned residential housing development. On February 19, 1996, Michael T. Oles and his fiancee, Kathleen C. Hilbert, signed a contract, entitled "Builder's Agreement," in which Wyatt agreed to sell and Oles and Hilbert agreed to purchase the property designated 3839 Dakota Road, in Shiloh Run. This property was identified, in the "Builder's Agreement," as Lot 54 of Shiloh Run, improved by a "Lauren III model" house, to be constructed by Wyatt "substantially according to plans and specifications on file with [Wyatt] and the selection sheet signed by [Oles and Hilbert]." Upon execution of the "Builder's Agreement," Oles and Hilbert paid a $3,200.00 deposit to Wyatt, and committed themselves to pay the balance of the $151,000.00 purchase price at closing.

Paragraph 32(e) of the "Builder's Agreement" provided:

CHANGES, ALTERATIONS TO HOME: No alterations, changes, or additions shall be made in the construction of the dwelling nor shall any extra work be performed or

materials added by Seller unless approved by a duly authorized agent of Seller in writing and <u>payment is made for such changes at the time requested by Buyer.</u> *It is understood that Purchaser is purchasing a completed dwelling, and that Seller is not acting as a contractor for Purchaser in the construction of the dwelling and that Purchaser shall acquire no right, title or interest in the dwelling except the right and obligation to purchase the same in accordance with the terms of this Contract upon its completion. Equitable title shall remain vested in Seller until delivery of the deed.*

(italics supplied; underlining in original).

After Oles and Hilbert signed the "Builder's Agreement," Wyatt started construction of the Lauren III model house. It contracted with Wolf to supply certain materials to be used in the construction of several dwellings at Shiloh Run. Between June 11, 1996 and June 28, 1996, Wolf delivered, to Lot 54 of Shiloh Run, building materials valued at $12,977.61, which were used by Wyatt in constructing the Lauren III model house. Sometime between June 28, 1996 and August 14, 1996, Wyatt paid Wolf for the building materials by issuing checks to it. The drawee bank returned Wyatt's checks unpaid, for insufficient funds.

On August 19, 1996, Oles was served with a certified letter, return receipt requested, from Wolf, dated August 14, 1996 and captioned "NOTICE TO OWNER OR OWNER'S AGENT OF INTENTION TO CLAIM A LIEN." In the letter, an attorney for Wolf attested, upon information and belief, that Wolf had supplied building materials that were used to construct a house on Lot 54 of Shiloh Run and that the $12,977.61 value of those materials was due and unpaid.

Closing on the 3839 Dakota Road property took place on September 6, 1996. The settlement sheet for the transaction reflected an entry captioned "Bills," at line 1304, for which there was a separate written breakdown sheet. On that sheet were listed the names of various building contractors and others to whom monies were owed. Wolf's name was not on the list. The $24,999.30 total sum listed on the settlement

sheet as "Bills" was deducted from the monies paid to Wyatt at closing. In addition, at the settlement table, Wyatt's President, Vincent J. Fiocco, III, furnished Oles and Hilbert a document entitled "Final Lien Waiver," in which he represented on Wyatt's behalf:

That all sums or obligations incurred in the performance of the Work, including labor, materials, taxes, and rental of equipment have been paid and there exist no laborers', materialmen's or mechanics' lien or other liens or privileges of any kind, nor any claims for same.

On October 15, 1996, Wolf filed a "Petition to Establish and Enforce Mechanics' Lien" against 3839 Dakota Road, in the amount of $12,999.61, and an affidavit in support, in the Circuit Court for Carroll County. Wolf identified Oles and Hilbert as the owners of 3839 Dakota Road and its agent attested that Wolf had served Oles with a notice of intention to claim a lien "in compliance with Section 9–104 of the Real Property Article of the Annotated Code of Maryland." On November 1, 1996, the circuit court issued a show cause order to Oles and Hilbert, pursuant to R.P. § 9–106(a). Oles and Hilbert responded by filing an answer and a counter-affidavit by Oles, in which he attested that, on August 19, 1996, when Wolf served him with the letter captioned "NOTICE TO OWNER OR OWNER'S AGENT OF INTENTION TO CLAIM A LIEN," neither he nor Hilbert was an owner of 3839 Dakota Road, and that, when they did become owners of that property on September 6, 1996, they took title in good faith, as bona fide purchasers for value.

On December 12, 1996, the circuit court held a hearing on Wolf's Petition to Establish Mechanics' Lien. Thereafter, it issued a written memorandum opinion and final order denying Wolf's petition, pursuant to R.P. § 9–106(b)(2). This appeal was then timely noted.

## DISCUSSION

### *Standard of Review*

Section 9–106(b)(2) of the Real Property Article provides:

If the pleadings, affidavits and admissions on file and the evidence, if any, show that there is no genuine dispute as to any material fact and that the petitioner failed to establish his right to a lien as a matter of law, then a final order shall be entered denying the lien for cause shown.

Wolf does not contest the circuit court's determination that there was no genuine dispute of material fact. As such, our task is to review purely legal questions, and we undertake an expansive review. *In re Michael G.,* 107 Md.App. 257, 667 A.2d 956 (1995). We may affirm the trial court's decision on any ground adequately shown in the record. *Offutt v. Montgomery Co. Bd. Of Ed.,* 285 Md. 557, 563, n. 3, 404 A.2d 281 (1979).

### Contentions of the Parties and Ruling of the Circuit Court

Wolf contends, as it did below, that, within the meaning of the Act, Oles and Hilbert became "owners" of the Dakota Road property on February 19, 1996, by equitable conversion; that Wyatt was a "contractor" from February 19, 1996 until closing; and that, by virtue of Wolf's contract with Wyatt, Wolf was a "subcontractor." Given those relative roles of the parties, Wolf argues it acted in accordance with § 9–104 of the Act, which conditions a subcontractor's mechanics' lien remedy upon the subcontractor having given advance notice of his intention to claim a lien to an owner of the property, by serving Oles with the August 14, 1996 letter. As such, Wolf maintains, the court should have granted its petition to establish and enforce a lien against the Dakota Road property.

Oles and Hilbert counter, as they did in the circuit court, that they did not become the "owners" of the Dakota Road property, within the meaning of the Act, until September 6, 1996, when they acquired legal title to the property. Thus, to the extent that Wolf was a subcontractor who was required to give the "owner" advance notice of its intention to claim a lien, the notice should have been given to Wyatt, not to them. Moreover, Oles and Hilbert argue, they took legal title to the property as bona fide purchasers for value, having been given

a final release waiver by Wyatt, the "owner" from whom they purchased the property.

The circuit court ruled that Oles and Hilbert were not the "owners" of the Dakota Road property in August, 1996—after they had signed the "Builder's Agreement" but before closing—because they did not hold legal title to the property at that time. It ruled further that, because Wyatt, not Oles and Hilbert, was the "owner" of the property, until legal title was conveyed at settlement, Wolf was a "contractor," not a "subcontractor." It also ruled that Wolf's notice of intention to claim a mechanics' lien had not been in conformity with § 9–104, as it had not been served on Wyatt, the "owner." Service on Oles, who was not the owner, was insufficient. Finally, the court adopted the uncontested assertion by Oles and Hilbert that they had acted in good faith when they settled on the property and acquired legal title on September 6, 1996.

### *Analysis*

#### i

A mechanics' lien is a statutorily created in rem remedy. As an in rem proceeding against property, an action to establish and enforce a mechanics' lien is "effective against the owner [of the property], for [the benefit of] subcontractors who perform their contractual obligations but are not paid." *Barry Properties, Inc. v. Fick Brothers Roofing Co.*, 277 Md. 15, 36, n. 11, 353 A.2d 222 (1976). The mechanics' lien law allows "a creditor for labor or materials to proceed in rem against improved property even though he could show no privity of contract with the owner, nor personal liability of the owner to him." *Himmighoefer v. Medallion Industries, Inc.*, 302 Md. 270, 277, 487 A.2d 282 (1985), *quoting, Mervin L. Blades & Son v. Lighthouse*, 37 Md.App. 265, 269, 377 A.2d 523 (1977). Without the mechanics' lien remedy, such a creditor would have no recourse against the property or the ultimate owner of the property, even though the owner would enjoy the improvements to the property made possible by the creditor's work and materials. Instead, the creditor's remedy

would be limited to obtaining a judgment against the person with whom he contracted, who would likely have no interest in the property and might be without assets.

■ Mechanics' liens are creatures of statute. *Freeform Pools, Inc., v. Strawbridge Home for Boys, Inc.*, 228 Md. 297, 301, 179 A.2d 683 (1962); *F. Scott Jay & Co. v. Vargo*, 112 Md.App. 354, 360, 685 A.2d 799 (1996). As such, to be entitled to a mechanics' lien against property in Maryland, one must satisfy the substantive and procedural criteria set forth in the Act. Section 9–102(a) of the Act provides that:

[e]very building erected ... is subject to establishment of a lien in accordance with this subtitle for the payment of all debts ... contracted for work done for or about the building and for materials furnished for or about the building....

If legal title is granted to a bona fide purchaser for value, however, the property is no longer subject to a mechanics' lien. R.P. § 9–102(d). The filing of a petition to establish mechanics' lien in the circuit court in which the property is situated, under § 9–105, constitutes "notice to a purchaser of the possibility of a lien being perfected ..." R.P. § 9–102(e).

A petition to establish mechanics' lien must set forth, *inter alia*, the name and address of the owner of the property against which the lien is sought to be established. R.P. § 9–105(a)(1)(ii).[1] Before a subcontractor may establish a mechanics' lien against property, he must give the owner advance notice of his intention to claim a lien, under § 9–104, and must include in his petition facts demonstrating that such notice was given. R.P. § 9–105. Upon receipt of a notice by a subcontractor of intention to claim a mechanics' lien, the owner of the property may withhold payment, from sums due to the general

---

1. Md. Rule 12–301, et seq. governs the procedure for petitioning for and obtaining a mechanics' lien. Rule 12–301(b)(6), defines "owner" to mean the "owner **of record** of the land ..." (emphasis supplied). Rule 12–302(b) provides that the owner must be identified in the complaint filed by the plaintiff; Rule 12–302(c) provides that the action to establish mechanics' lien shall be brought against the owner of the land against which the lien is sought to be established.

contractor, of the amount due to the subcontractor. R.P. § 9–104(f).

### ii

A bona fide executory contract for the sale of real property vests equitable ownership of the property in the contract purchaser. During the executory period, the purchaser owns equitable title to the property and the seller retains bare legal title, which it owns in trust for the purchaser, as security for payment of the purchase money. *DeShields v. Broadwater*, 338 Md. 422, 437–48, 659 A.2d 300 (1995); *Caltrider v. Caples*, 160 Md. 392, 396, 153 A. 445 (1931). "Equitable conversion" is the legal doctrine that explains the changes in ownership interests brought about by the execution of a contract for the sale of land:

> [W]hen the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes the owner of the land, the vendor of the purchase money. In equity the vendee has a real interest and the vendor a personal interest. Equity treats the executory contract as a conversion, whereby an equitable interest in the land is secured to the purchaser for whom the vendor holds the legal title in trust. This is the doctrine of equitable conversion.

*Himmighoefer v. Medallion Industries, supra*, at 278, 487 A.2d 282, *quoting*, 8A Thompson, R.P. § 4447 (Grimes Repl. Vol. (1963)).

Generally, a judgment is a lien only against whatever interest and estate a debtor has in land when the judgment is obtained and recorded. *Knell v. Green Street Bldg. Ass'n.*, 34 Md. 67, 70–72 (1871); Md.Code Ann., (1995 Repl.Vol.), § 11–402 of the Cts. & Jud. Proc. Article. A judgment debtor's equitable interest in real property may be subject to a judgment lien: "[E]quitable interests in lands are bound by judgments against the party having the equity." *Hollida v. Shoop*, 4 Md. 465, 475, 59 Am. Dec. 88 (1853); *McMechen v. Marman*, 8 Gill & J. 57 (1836). As such, a judgment against the purchaser of land is a lien on the purchaser's equitable

interest in the land. *Coombs v. Jordan,* 3 Bland 284, 22 Am. Dec. 236 (1831). A judgment creditor's lien will not attach to the judgment debtor's bare legal title in property, held as security for a debt. *Galeano v. Galeano,* 21 Md.App. 208, 211, 319 A.2d 129 (1974); *In re Urban Dev. Co. & Assocs.,* 452 F.Supp. 902, 906 (D.Md.1978). In that circumstance, the legal title is a technicality. Of course, a judgment creditor of a debtor holding bare legal title to property cannot attach the equitable interest in the property, as it is vested in another.

Until 1976, when the Court of Appeals ruled Maryland's Mechanics' Lien Statute unconstitutional in part, *see Barry Properties v. Fick, supra,* a mechanics' lien took priority over any mortgage, judgment, lien, or encumbrance attaching to improved property after commencement of construction and before establishment of the mechanics' lien. Md.Code, (1974, 1975 Cum.Supp.), § 9–107(b) of the Real Property Article. That priority was ruled "null and void," in *Barry Properties,* as it operated to deprive owners of significant property interests, without notice, a prior opportunity to be heard, or other procedural safeguards compatible with the due process clauses of the Fourteenth Amendment and Article 23 of the Maryland Declaration of Rights.

In *Himmighoefer v. Medallion Industries, Inc., supra,* the Court of Appeals determined, under the Act, post-*Barry Properties,* the effect of a contract of sale for value of property on a subcontractor's mechanics' lien remedy against the property. There, a subcontractor performed work and furnished materials for the construction of two houses, under a contract with the builder of a residential housing development who did not own the properties. Subsequently, the owner of the properties executed contracts to sell them to two purchasers. During the executory period, the subcontractor filed petitions to establish mechanics' liens against the properties, naming the owner/seller as the defendant. The owner/seller then conveyed legal title of the properties to the purchasers, for full value. The court entered a default decree establishing mechanics' liens against the properties after the owner/seller did not respond to a show cause order.

The purchasers learned of the mechanics' liens when their properties were posted for sale. They intervened and moved to vacate the decree. The circuit court granted them relief temporarily, but ruled, ultimately, that they had been on notice that the subcontractor had not been paid, by virtue of its having filed a petition to establish mechanics' liens before the legal titles were conveyed. The court directed that the liens be re-established. An appeal was noted, and the Court of Appeals took certiorari on its own motion.

In reversing the circuit court, the Court drew an analogy between mechanics' liens and judgment liens. It reasoned that, after *Barry Properties*, a mechanics' lien holder can have no greater equity in the seller's real property than a judgment creditor of the seller would have; therefore, the relative rights of a mechanics' lien holder and an equitable title holder in real property must be the same as the relative rights of a judgment creditor and an equitable title holder in real property. The equitable interest in real property of a purchaser under an executory contract of sale is superior to the equitable interest of a judgment creditor whose judgment against the legal title holder of the property was recorded after execution of the contract of sale. *Caltrider v. Caples, supra*, at 396, 153 A. 445. A judgment creditor " '... must stand or fall by the real[,] and not by the apparent, rights of the defendant [debtor] in the judgment.' " *Knell v. Green Street Bldg. Ass'n., supra*, at 72, *quoting, Cadbury v. Duval*, 1 Am. Law Reg. 105 (1852). A seller of real property under an executory contract has no real right in the property: rather, he has bare legal title, as security for the purchase price, which is an interest in personalty, not realty. Just as the judgment creditor has no equity that can attach the purchaser's equitable interest in the property by judgment lien, a mechanics' lien claimant has no equity in the property that can attach the purchaser's equitable interest in the property by mechanics' lien. Accordingly, the subcontractor could not place mechanics' liens against the properties, as its claims against the properties, through the legal titles of the owner/seller, could not attach the purchasers' equitable interests.

Eight years after its decision in *Himmighoefer,* the Court of Appeals once again addressed the impact of an executory contract of sale for value of real property on a subcontractor's mechanics' lien claim against the property. In *York Roofing, Inc. v. Adcock,* 333 Md. 158, 634 A.2d 39 (1993), the arguments advanced by the petitioners/subcontractors were similar to those urged upon us by Wolf. The subcontractors performed work and furnished materials for the renovation of a building. While they were so engaged, the property owner entered into a contract to sell it, for value. The subcontractors completed their work; thereafter, the owner/seller conveyed legal title to the purchasers. A month later, the subcontractors served the purchasers with notices of their intentions to establish mechanics' liens against the property. They then filed petitions in circuit court, seeking to establish and enforce mechanics' liens and naming the purchasers as defendants. The lower court denied the petitions, and this Court affirmed that ruling in an unpublished opinion. The Court of Appeals then granted certiorari.

The subcontractors maintained that, under the analysis employed by the Court in *Himmighoefer,* the purchasers under the executory contract of sale became the equitable owners of the property, and, therefore, were "owners" of the property within the meaning of the Act. By serving notices of their intentions to claim mechanics' liens on the purchasers, the subcontractors gave notice to an "owner," as required by § 9–104. Upon timely and proper petition to the circuit court, they were entitled to mechanics' liens against the property.

The Court disagreed, and affirmed the denial of the subcontractors' petitions. It held that, even though the purchasers acquired equitable ownership of the property upon execution of the contract of sale, this equity interest alone did not make them "owners," within the meaning of the Act. The Court explained that the definitions of "owner," "contractor," and "contract" in the Act are interrelated, so as to make plain that an "owner" must be a party to an agreement for the doing of work or the furnishing of material, or both, for or about the

building that is sought to be subject to the lien.[2]  The purchasers were not parties to the contract for the renovation of the property;  therefore, although they owned equitable title, they were not the "owners" of the property, for purposes of establishing a mechanics' lien:

> These [definitions] clearly exclude [the purchaser] as owners within the contemplation of the Mechanics' Lien Law since they entered no contract with [the general contractor] for the improvement of the property which they subsequently purchased.  The only contracts which [the subcontractors] entered for furnishing labor and materials were with [the general contractor], and there is no evidence that it was acting as an agent of the [purchasers].  Consequently, the [purchasers'] property was not subject to a mechanics' lien under the statute.  *Greenway v. Turner*, 4 Md. 296, 304, 305 (1853)(The liability of the owner under the mechanics' lien law is created not by act of the party, but by law, and must rest solely upon the terms of the law, one of which is that there must be an active subsisting contract between the builder and the owner, before the latter can be made responsible for materials furnished to the former.).

333 Md. at 168–69, 634 A.2d 39.

The Court in *York Roofing* held further that the defendants were bona fide purchasers for value, who had acquired legal title to their properties free of mechanics' liens that were established after they signed their contracts of sale.  It noted, moreover, that, even if the purchasers had had actual knowledge of the unpaid debts owed to the subcontractors when legal title was conveyed to them, the result would not have

---

**2.** The pertinent definitions, set forth at § 9–101 of the Act, are as follows:

(c) *Contract.*—"Contract" means an agreement of any kind or nature, express or implied, for doing work or furnishing material, or both, for or about a building as may give rise to a lien under this subtitle.

(d) *Contractor.*—"Contractor" means a person who has a contract with an owner.

(f) *Owner.*—"Owner" means the owner of the land ...

(g) *Subcontractor.*—"Subcontractor" means a person who has a contract with anyone except the owner or his agent.

differed. When equitable title was transferred to the purchasers, by virtue of the execution of the contract of sale, the subcontractors merely had claims against the seller, not judgment liens. Just as a contract purchaser's prior knowledge of a claim against the contract seller that is not reduced to judgment will not impair the purchaser's equitable title or interfere with his right to take legal title upon payment of the purchase money, a contract purchaser's prior knowledge of a claim against the contract seller for which a mechanics' lien is not established will not have a like effect.

### iii

As our discussion reveals, equitable title to real property passes upon execution of a contract of sale. Oles and Hilbert do not dispute that they became the equitable owners of the Dakota Road parcel of land, including the house that was to be constructed there, on February 19, 1996.[3] Wyatt retained legal title, as security for payment by Oles and Hilbert of the purchase price balance for the lot and completed house.

During the executory period of the contract between Wyatt and Oles and Hilbert, Wolf became a creditor of Wyatt, with a right of action against Wyatt for contract damages for nonpayment of materials furnished. Wolf was not a judgment or lien holder. It stood in the same position as any other creditor of Wyatt whose claim had not been reduced to judgment before Wyatt executed the contract to sell the Dakota Road property to Oles and Hilbert. A judgment lien later obtained by such a creditor could not reach Wyatt's bare legal title in the property; likewise, if Wolf were to obtain a mechanics' lien, it could not attach Wyatt's legal interest in the property. This analogy holds true irrespective of the relative dates of the "Builder's Agreement" and Wolf's contract to supply building materials to Wyatt. Thus, to the extent that

---

**3.** Oles and Hilbert did not contend below and do not argue to us that, by virtue of the language of paragraph 32(c) of the "Builder's Agreement," equitable title did not pass to them upon execution of the contract of sale.

the mechanics' lien sought by Wolf was rooted in Wolf's contract with Wyatt and would serve to remedy Wyatt's breach of that contract, the Dakota Road property was immune from a mechanics' lien.

In *York Roofing*, the Court suggested that, when a mechanics' lien is sought against property to remedy a breach of contract by the *purchaser* of the property, as opposed to a breach of contract by the *seller* of the property, the equitable interest of that purchaser may not be immune from attachment and may be subject to the lien. In other words, if the purchaser is a party to the contract for the doing of work or furnishing material about the building that may give rise, under § 9–102, to a mechanics' lien, and the lien is indeed being sought to remedy a breach of that underlying contract, the purchaser is an "owner," within the meaning of the Act, and his equitable interest in the property may be reached. *See e.g. Goldheim v. Clark & Co.*, 68 Md. 498, 504, 13 A. 363 (1888) (builder's equitable ownership interest in property was subject to mechanics' lien arising out of builder's breach of contract with materialman); *cf. U.S. Tile & Marble v. B & M Welding*, 254 Md. 81, 87, 253 A.2d 838 (1969) ("mechanics' lien ordinarily attaches to whatever interest the person responsible for the improvements has in the property.")

Unlike the property seller in the *York Roofing* case, Wyatt functioned in a dual capacity. After it executed the "Builder's Agreement," Wyatt retained legal title to the property and served as the project builder/developer, entering into contracts, such as that with Wolf, which enabled construction of the Lauren III house. The "Builder's Agreement" expressly provided that, in its capacity as builder, Wyatt was *not* operating as the general contractor for Oles and Hilbert: "It is understood that Purchaser is purchasing a completed dwelling, and that Seller is not acting as a contractor for Purchaser in the construction of the dwelling ..." Thus, Wyatt occupied two roles with respect to the Dakota Road property: legal owner and builder. For one party to serve in two capacities in mechanics' lien cases is not unusual, as we observed in *Skinner v. First United Church:*

Maryland has implicitly accepted the notion that the same entity can function in a dual capacity, as both owner and contractor, in mechanics' lien cases. *Wohlmuther v. Mt. Airy Plumbing and Heating*, Inc., 244 Md. 321, 326, 223 A.2d 562 (1966) ... held that the notice to an owner required by the mechanics' lien law was unnecessary when the owners were also the prime contractor, and thus upheld the finding of a valid mechanics' lien ...

\* \* \*

In the case sub judice, the contractor/owner relationship is a legal fiction as the church has elected to function as both owner and contractor. Privity between the subcontractor and the owner already exists. *See Wilhelm v. Roe*, 158 Md. 615, 622–624, 149 A. 438 (1930) (no notice under former version of Mechanics' Lien Statute is required if the claimant has contracted with the owner himself.)

88 Md.App. 434, 440–41, 594 A.2d 1245 (1991) (footnotes omitted).

In August, 1996, when Wolf served Oles with written notice of intention to file a mechanics' lien, Wyatt was the legal owner of the Dakota Road property and, as builder, was a party to the contract for furnishing materials about the building on which Wolf's claim and its sought-after mechanics' lien were based. By contrast, Oles and Hilbert were equitable owners of the property that they had agreed to purchase upon completion of the improvements but they were not parties to a contract for the "doing [of] work or furnishing [of] material, or both ... as may give rise to a lien ...," including the contract underlying Wolf's claim and asserted mechanics' lien. Indeed, under the terms of their "Builder's Agreement" with Wyatt, Oles and Hilbert could not enter into such a contract or take any steps to control the furnishing of materials or the doing of work about the building, during construction.

The mechanics' lien sought by Wolf stemmed from its contract with Wyatt, the property seller, and not from any contract with Oles and Hilbert, the property purchasers, as no such contract existed. Unlike a contract creditor of Oles and

Hilbert, who, during the executory period of their "Builder's Agreement" with Wyatt, could have obtained a judgment and attached their equitable interest in 3839 Dakota Road, Wolf had no underlying claim against Oles and Hilbert from which an analogous right in their interest in the Dakota Road property could arise. As such, Wyatt, not Oles and Hilbert, was the "owner" of the property, within the meaning of the Act, and the equitable interest of Oles and Hilbert, who were not "owners" within the meaning of the Act, could not be reached by a mechanics' lien. Oles and Hilbert were entitled to take legal title of the property upon payment of the purchase money, irrespective of any knowledge on their part of Wolf's claim against Wyatt. *York Roofing, supra*, at 169–70, 634 A.2d 39.

Oles and Hilbert asserted below that they took legal title to 3839 Dakota Road in good faith, as bona fide purchasers for value. Under § 9–106 of the Act, the petitioner bears the burden of establishing the validity of his mechanics' lien claim, including proving that the owners did *not* take legal title as bona fide purchasers for value. *Talbott Lumber Co. v. Tymann*, 48 Md.App. 647, 651–53, 428 A.2d 1229, *cert. denied*, 290 Md. 723 (1981). In this case, Wolf did not contest Oles's and Hilbert's status as bona fide purchasers.[4] Had Wolf filed a petition to establish mechanics' lien, pursuant to § 9–105, before the September 6, 1996 closing date, Oles and Hilbert would have been placed on "notice. .. of the possibility of a lien being perfected under this subtitle," § 9–102(e), and the legal title they acquired from Wyatt would not have been exempt from a mechanics' lien. R.P. § 9–102(d).

### iv

Finally, as we already have observed, § 9–104 of the Act requires that a subcontractor furnish the property owner

---

4. During oral argument, counsel for Oles and Hilbert explained, in response to a question from the Court, that his clients had inquired, at settlement, whether Wolf had been paid, and were informed by Wyatt that Wolf had been paid. Oles and Hilbert then demanded and were given the "Final Lien Waiver" as proof of that representation.

advance notice of the subcontractor's intention to claim a mechanics' lien. The circuit court found that Wolf failed to comply with § 9–104 because it gave notice to Oles, who was not the "owner," within the meaning of the Act. When a material supplier has contracted directly with the owner, the supplier is not a "subcontractor." The supplier need not serve the owner with notice of intention to claim a mechanics' lien, under § 9–104, because the owner is in privity with the supplier and, therefore, has actual notice that a lien may be claimed against the property to remedy his failure to pay. *Wohlmuther v. Mt. Airy Plumbing and Heating, Inc.,* 244 Md. 321, 326, 223 A.2d 562 (1966) (addressing Md.Code Ann., Art. 63, § 11(a) (1957)).

In this case, Wolf was not required to serve a § 9–104 notice of intention to claim mechanics' lien. To the extent that the Dakota Road property was subject to a mechanics' lien, Wolf's claim was governed by § 9–105. The circuit court's ruling that Wolf was not entitled to a lien against 3839 Dakota Road because it failed to comply with § 9–104 was in error; the error was harmless, however, because Wolf could not establish a mechanics' lien against that property, in any event.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**