## BRUCE C. HILL, Trustee *v.* PARKWAY INDUSTRIAL CENTER

[No. 44, September Term, 1981.]

*Decided October 7, 1981.*

The cause was argued before GILBERT, C. J., and MORTON and LOWE, JJ.

*Stanley H. Katz,* with whom were *B. Marvin Potler* and *Steinberg, Schlachman, Potler, Belsky & Weiner, P.A.* on the brief, for appellant.

*Thomas Waxter, Jr.,* and *Norman E. Parker, Jr.,* with

whom were *Semmes, Bowen & Semmes* on the brief, for appellee.

Lowe, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Anne Arundel County by Bruce C. Hill, Trustee (Hill) of the Estate of C. George Mills and Sons, Inc. (Mills) who was awarded $315.06 of a claim against Parkway Industrial Center (Parkway) for $8,229.25. The latter amount was said to be due on a contract with Mills to build a bank and office building on Parkway's property. Mills subcontracted with Barber-Coleman Company to furnish and install temperature controls on the project. By October 25, 1978, Barber-Coleman substantially completed its work for Mills.

On December 22, 1978, Mills executed a Deed of Trust for the benefit of creditors and appellant Bruce C. Hill was named Trustee. Five days later, on December 27, 1978, Barber-Coleman notified Parkway of its intent to claim a mechanics' lien against the project property belonging to Parkway. On January 17, 1979, the Circuit Court for Baltimore County assumed jurisdiction of the Trust Estate of Mills. Meanwhile, on April 10, 1979, the Circuit Court for Anne Arundel County ordered a mechanics' lien established in favor of Barber-Coleman against Parkway for $7,914.19 and ordered the property sold unless paid on or before April 30, 1979. Parkway paid Barber-Coleman to effect the release of the lien in compliance with the court order.

On May 29, 1980, Hill as Trustee for Mills, sued Parkway to obtain the payments which Parkway had withheld because Mills had allegedly failed to complete its work and finish the job, or to fulfill its guaranties, pay its subcontractors and provide Parkway with lien releases.

The trial court found that Mills had substantially performed its work under its contract with Parkway and was therefore due $8,229.25 from Parkway as of November 9, 1978. The court also found that Barber-Coleman had substantially completed its work under the agreement with

Mills, and that Barber-Coleman was due its payment upon completion of the work on October 25, 1978. The court ruled that Parkway had the right to withhold funds owed to Mills under the Mechanics' Lien Law, Md. Real Prop. Code Ann. § 9-104 (f) (1980), and that it was proper to set off Parkway's payment to Barber-Coleman to effect the release of the lien against Parkway's debt to Mills. Judgment was entered in favor of the plaintiff Trustee in the amount of $315.06 (the difference between the $8,229.25 due Mills and the setoff of $7,914.19 paid by Parkway to Barber-Coleman). Hill appealed.

Pursuant to the Mechanics' Lien Law, Md. Real Property Code Ann. § 9-104 (f) (1980), the owner of the land upon which improvements are made may withhold sums due a contractor in the amount the owner ascertains to be due a subcontractor who has notified the owner of an intent to claim a lien. To avoid this statute appellant contends that Parkway is in this case both owner and contractor because of the contractual terminology so specifying. Because appellee "is not an owner exclusively. . .", appellant claims that appellee may not avail itself of the right to withhold under § 9-104 (f). Appellant contends semantically that appellee as owner may withhold payments only from itself as contractor. The chancellor charitably addressed this contention as a "fine distinction" but nonetheless held that Parkway was an owner entitled to invoke the rights under § 9-104 (f).

The Mechanics' Lien law was designed, in part, to provide the property owners as a second source of payment since they receive the ultimate benefit of services and materials and, as a practical consideration, control the cash. *Palmer Park Ltd. v. Marvelite, Inc.*, 255 Md. 121, 126 (1969). That appellee was such an owner was a finding of fact which we do not find to have been clearly erroneous in light of the § 9-101 (e) definition.[1]

---

1. Md. Real Prop. Code Ann. § 9-101 (e) (1980):

"*Owner.* — 'Owner' means the owner of the land except that, when the contractor executes the contract with a tenant for life or for years, 'owner' means the tenant."

Appellant alternatively argued that appellee had no right to withhold because Mills had substantially completed its contract. This argument is obviously predicated upon the success of the former contention and need not be met in light of our holding; however, we are compelled to point out, as noted by appellee, that while the court factually found that Mills "had completed work by the 9th of November 1978 that totals eight thousand two hundred and twenty-nine dollars and twenty-five cents", the finding was to establish only the predicate for the trustee's claim vis-a-vis the setoff. The chancellor did not hold that the assignor had "completed its promissory duty". The record clearly indicates the contrary. Mills notified Parkway on December 18, 1978 that it could not complete the work or pay its subcontractor, nor did it submit its waiver of liens sheet. Although the issue was not presented to, or decided by, the trial judge, such conduct was hardly a performance of Article 6 of the agreement between Parkway and Mills which stated in part:

"Before issuance of the final payment the Subcontractor [Mills], if required, shall submit evidence satisfactory to the Contractor [Parkway] that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied."

But the issues relating to the chancellor's factual findings are merely a prelude to the heart of the appellant's contention. Hill's legal arguments are summarized by him in two sentences:

"I. In order for a claim of a debtor of an assignor for the benefit of creditors to acquire a claim against the assignor, that may be used as a setoff to the debtor's own liability, that claim must arise before the date of the assignment for benefit of creditors."

"II. A claim against the assignor for the benefit of creditors must arise before the date of the commencement of proceedings for the assignment for the benefit of creditors in order to have a setoff

against the trust estate which would not be a preference."

Both of appellant's arguments concerning what claims may be used as setoffs deal almost exclusively with *when* the claim arises. He relies primarily upon *Richardson v. Anderson,* 109 Md. 641 (1909) which he refers to as the "seminal case in Maryland dealing with the law of assignment for the benefit of creditors". In *Richardson,* the Maryland Grain Agency executed a deed of trust for the benefit of creditors on February 27, 1908. Anderson was the trustee. Richardson had been the agency manager and owed the agency $1,541.71 for which Anderson, as trustee, sued him. Among Richardson's defenses was a claimed equitable setoff for the amount of a note then due to George Merryman from whom Richardson obtained it by endorsement *after* the assignment by Maryland Grain for the benefit of its creditors.

The Court of Appeals pointed out that it would be unjust, inequitable and intolerable in law or equity to permit a debtor to purchase, for a small consideration, claims against the assignor and acquire preferences in the distribution of the trust estate. *Id.* at 645.

Richardson had also been an accommodation endorser, prior to the assignment, for an agency indebtedness which came due after execution of that deed of trust. The Court decided that in order for there to be a setoff in favor of the creditor of the assignor, the debt must exist *at the time of the assignment* by virtue of a claim then due. *Id.* at 646.

From these two issues in *Richardson,* appellant in the case before us has concluded several rules of law governing assignment for the benefit of creditors. First he concedes the primary *Richardson* predicate:

That an assignee for the benefit of creditors takes property subject to all existing equities. . . ,

and further that

The equities need not exist at the inception of the debt.

It is sufficient if they exist prior to the assignment.

But these concessions are made in passing to reach the rule upon which his arguments rest:

A claim acquired after the assignment cannot be set off against the assignee; nor a liability, existing but not due at the time of the assignment, even if it becomes due before the suit was commenced.

In order to determine when a claim is acquired one first must determine what the term means. "Claim" is defined by *Black's Law Dictionary* (333 3rd ed., 1944) as

"A legal *capability to require* a positive or negative act of another person." (emphasis added).

Appellant, however, equates the establishment of a lien for priority purposes with when a "claim" is due. While it is certainly true that a mechanics' *lien* does not attach until it is established by the court after procedural conformity, *Mervin L. Blades and Son, Inc. v. Lighthouse Sound Marina and Country Club et al.,* 37 Md. App. 265, 27 (1977), the *lien* is only a means of receiving payment, it is not the claim upon which the lien is founded. The debt or claim upon which a lien is predicated becomes due when the work is done or the materials supplied. For ninety days after completion a subcontractor is given a statutory alternative against which he may proceed on the debt that has come due. The claim to which he is, upon completion, entitled is consummated and collected simply by notifying the property owner, § 9-104 (a), and proceeding as outlined in the statute within 180 days after the work is finished or the materials furnished, § 9-105 (a). The statute clearly presupposes a debt due when the work was completed, which it was here by Barber-Coleman no later than October 25, 1978, as factually found by the chancellor.

The term "claim" is more analogously interpreted here in light of its use in the second issue raised by *Richardson.* The second issue was whether Richardson could set off against

his indebtedness to the assignor the payment on a note of the insolvent for which he (Richardson) was an accommodation endorser. The Court ruled that in order for there to be a setoff in favor of the creditor of the assignor, "it must exist at the time of the assignment by virtue of a claim then due." *Id.* at 646, but it indicated that what it considered a "claim then due" was the exposure of the accommodation endorser on the note in question. The note had not come due prior to the assignment in that case and therefore the assignee took the claim his assignor had against Richardson free of any right of setoff. The Court pointed out that but for the assignment, Richardson, as accommodation endorser, could have paid off the note and set off the amount so paid by him against his debt due the agency "at any time before the trial of the case", wherein the agency had sued him. *Id.* at 648. The equitable implication follows for purposes here that one of the equities that existed at the time of the assignment in this case (to which the claim against Parkway was subjected when taken by the assignee) was the statutory responsibility to pay the debt due Barber-Coleman when its work was completed by October 25, 1978, prior to the assignment, if called upon to do so by the subcontractor. Parkway, therefore, had the right to protect itself by payment when it was notified to do so, and the duty to do so when compelled by court order "before the trial of the case" here appealed.

To have construed *Richardson* as appellant would have us do, would create the harsh and unfair result of having equity courts compel Parkway to pay twice a single debt. *Richardson* simply holds that a defendant has all of the rights after an assignment that he would have had before it, but not one whit more — and that seems fair indeed. He may not take advantage of an insolvent's misfortune by buying claims or paying off debts to which he had not yet been exposed simply to gain an advantage over fellow creditors; [2] but he need not double their advantage over him by twice

2. Constituting such a payment as a statutorily proscribed "preference" through a rather convoluted reasoning process also avails appellant naught. To do so he again fails to distinguish between the attachment of a

contributing involuntarily because of an exposure before the assignment which was statutorily imposed and judicially enforced. Neither *Richardson* nor the Mechanics' Lien Law ever intended such a result.

*Judgment affirmed.*
*Costs to be paid by appellant.*

lien and exposure to the debt upon which the lien is predicated. We will not address that issue further except to say that appellant's concern for the creditors causes us to muse upon how much pecuniary advantage these creditors would have achieved — even with a favorable result — after the $7,914.19 claim had wended its way through the appellate process.