875 A.2d 789

Leland BRENDSEL, et al.

v.

WINCHESTER CONSTRUCTION COMPANY, INC.

No. 1324, Sept. Term, 2004.

Court of Special Appeals of Maryland.

June 7, 2005.

Lawrence S. Greenwald (Catherine A. Bledsoe, Donald A. Rea, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, L.L.C., on the brief), Baltimore, MD, for appellant.

Robert M. Wright (William P. Pearce, Whiteford, Taylor & Preston on the brief), Baltimore, MD, for appellee.

Panel: DAVIS, DEBORAH S. EYLER, THEODORE G. BLOOM (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, J.

In the Circuit Court for Queen Anne's County, Winchester Construction Company, Inc. ("Winchester"), the appellee, filed a petition to establish and enforce a mechanic's lien against Leland C. and B. Diane Brendsel, the appellants, owners of certain real property. Mrs. Brendsel filed a counterclaim

alleging breach of the parties' construction contract and violations of the Maryland Consumer Protection Act, Maryland Code (1975, 2000 Repl.Vol.) sections 13–101 *et seq.* of the Commercial Law Article.

By consent of the parties, the court established an interlocutory mechanic's lien against the property in the amount sought by Winchester. Also by consent of the parties, the Brendsels engaged in discovery for a limited, defined period of time, during which Winchester agreed not to file a petition to compel arbitration under an arbitration clause in the construction contract. The day after that discovery period expired, Mrs. Brendsel filed a motion for partial summary judgment on her breach of contract claim. Winchester filed a petition to compel arbitration and to stay the court proceedings. The court granted the petition to compel arbitration and stayed further proceedings pending arbitration.

The Brendsels appeal the order compelling arbitration, asking:

"Did Winchester [ ] waive its contractual right to arbitrate when it elected to sue for a mechanic's lien in court rather than initiat[e] arbitration in accordance with the parties' contract?"

For the following reasons, we shall affirm the order of the circuit court.

## FACTS AND PROCEEDINGS

The Brendsels are the owners of "Wye Hall," an historic plantation house and carriage house in Queen Anne's County ("the Property"). Winchester is a Maryland general contractor that specializes in historic home renovation.

On November 3, 1999, Mrs. Brendsel entered into a construction contract with Winchester to repair and renovate the Property (the "Agreement").[1] The Agreement called for Win-

---

1. The Agreement states that it is between Winchester and "Mr. and Mrs. Leland Brendsel"; however, only Ms. Brendsel signed it. The signature line in the Agreement for Mr. Brendsel is blank.

chester to hire subcontractors and, in consultation with desig-
nated architects and engineers, perform the work requested
by Mrs. Brendsel. Winchester was to submit periodical pay
applications describing the work performed and itemizing the
expenses incurred.

The Agreement included an arbitration clause, at Article 15,
Paragraph 8, stating:

> All claims or disputes between [Winchester] and [Mrs.
> Brendsel] arising out of or relating to the Contract Docu-
> ments, or the breach thereof, shall be decided by arbitration
> in accordance with the Construction Industry Arbitration
> Rules of the American Arbitration Association ["AAA"]
> currently in effect unless the parties mutually agree other-
> wise and subject to an initial presentation of the claim or
> dispute to the Architect as required under [the Agree-
> ment].[2] Notice of the demand for arbitration shall be filed
> in writing with the other party to this Agreement and with
> the [AAA] and shall be made within a reasonable time after
> the dispute has arisen.

Winchester began work and submitted its first pay applica-
tion on February 25, 2000. In late 2001, disputes arose
between the parties over Winchester's billing practices and
the quality of its work. Lawyers for the parties met during
the summer of 2002, in an effort to resolve their clients'
differences. In the meantime, Winchester continued to sub-
mit pay applications, which the Brendsels did not immediately
pay.

---

**2.** Article 15, Paragraph 5 of the Agreement provided:

> The Architect will interpret and decide matters concerning perform-
> ance under and requirements of the Contract Documents on written
> request of either [Mrs. Brendsel] or [Winchester]. The Architect will
> make initial decisions on all claims, disputes or other matters in
> question between [Mrs. Brendsel] and [Winchester], but will not be
> liable for results of any interpretations or decisions rendered in good
> faith. The Architect's decisions in matters relating to aesthetic effect
> will be final if consistent with the intent expressed in the Contract
> Documents. All other decisions of the Architect, except those which
> have been waived by making or acceptance of final payment, shall be
> subject to arbitration upon the written demand of either party.

On August 1, 2002, the parties executed a Memorandum of Understanding ("MOU"), amending the Agreement.[3] The MOU stated that, when Winchester submitted its final accounting of all costs, Mrs. Brendsel would have 45 days for her accountants to review the submission; and that, within seven days after the review, Mrs. Brendsel would "pay either the requested amount or the lesser amount substantiated by [her accountants]. . . ." If Winchester disagreed with the amount paid, "the matter c[ould] be resolved by negotiation or arbitration." The MOU also provided that Mrs. Brendsel could terminate the Agreement "for her convenience." In that event, Winchester would be entitled to receive payment for "work done to the date of termination subject to any appropriate offsets."

Winchester submitted pay applications in late 2002 and early 2003. The Brendsels did not make payment and continued to dispute Winchester's billing methods and workmanship. On January 28, 2003, Mrs. Brendsel and Winchester entered into a letter agreement further amending the Agreement by reducing the fee Winchester would charge for work performed after January 10, 2003.

The Brendsels paid some but not all of the amounts in pay applications submitted by Winchester in February through mid-May 2003. On May 23, 2003, Mrs. Brendsel terminated the Agreement for convenience. In July and August of 2003, Winchester submitted pay applications, which also were not paid.

On August 13, 2003, Winchester submitted a final "Revised Payment Reconciliation," showing $815,877.27 due and owing. Sometime soon thereafter, the Brendsels and their lawyers parted company. On September 9, 2003, the Brendsels hired new counsel.

Three weeks later, on September 30, 2003, counsel for the Brendsels wrote to Winchester's lawyer, saying that a review

---

3. The MOU contained a signature line only for Mrs. Brendsel, which she signed. Also, the text of the MOU refers only to "Brendsel."

of the final accounting was being conducted, as required by the MOU, and suggesting that, once the review was completed, they should meet "to discuss a potential resolution of the matter without resorting to litigation...." He further suggested that the parties enter into an agreement to toll the deadlines in the Agreement and the MOU.

Counsel for the parties met and, on October 1, 2003, the parties entered into an agreement "toll[ing] and suspend[ing]" all deadlines in the Agreement and the MOU, "as well as any statutory or common-law limitations periods, including statutes of limitation and common-law laches, ... until five (5) business days after written notice of either party's withdrawal from this Tolling Agreement is delivered to the other party."

Over the next six weeks, the Brendsels, through counsel, continued to seek information for their accountants to complete their review of Winchester's Revised Payment Reconciliation, and Winchester, also through counsel, continued to furnish the information as requested.

On November 14, 2003, in the Circuit Court for Queen Anne's County, Winchester filed a "Petition to Establish and Enforce Mechanic's Lien," naming the Brendsels as owners of the Property and defendants. Winchester alleged that it had furnished work, labor, and materials under the Agreement from "September [of] 1999 through June 3, 2003" and that, according to its final accounting, $815,877.27 remained due and owing. It asked the court to issue a show cause order; establish a mechanic's lien in the amount sought; order the Property sold unless payment was made on the amount due by a date specified by the court; and grant any other appropriate relief. The petition did not include a demand for arbitration or mention the arbitration clause in the Agreement.

Notwithstanding the filing of the mechanic's lien action, the parties, through counsel, continued to discuss their disputes in an effort to resolve them through negotiation. On December 10, 2003, the Brendsels' lawyer responded in writing to Winchester's Revised Final Accounting, asserting that, due to surcharges and defective work, the Brendsels were entitled to

repayment from Winchester of at least $871,872.28, and suggesting that, "rather than initiat[e] an action ... at this point ... it makes sense to meet in an effort to resolve the matter."

By letter of December 24, 2003, Winchester's lawyer responded, disputing the Brendsels' claim that Winchester owed them money and seeking information about the basis for that claim. The Brendsels' lawyer responded by letter of February 2, 2004, disputing Winchester's counsel's calculations and construction of the Agreement, and suggesting that the lawyers "meet at this point to discuss the matter."

In the meantime, on January 9, 2004, Winchester filed an "Amended Petition to Establish and Enforce Mechanic's Lien." [4] In its prayer for relief, it sought "such other and further relief as the nature of [Winchester's] cause may require, *including, but not limited to, a stay of proceedings after an interlocutory lien is established pending the outcome of an arbitration proceeding between the parties hereto.*" (Emphasis added.)

The court issued a show cause order on February 2, 2004, directing the Brendsels to file an affidavit or a verified answer on or before March 8, stating why a mechanic's lien for the amount Winchester sought should not attach; and scheduling a probable cause hearing on the interlocutory lien request for March 15.

On March 4, 2004, the Brendsels filed a verified answer to the amended petition. Also that day, Mrs. Brendsel filed a counterclaim for breach of contract and violation of the Maryland Consumer Protection Act ("MCPA"). In the breach of contract count, she alleged that Winchester had performed defective work, directly or through subcontractors, and had

---

4. By Memorandum entered on December 11, 2003, the court had asked Winchester to supplement its petition or explain why it did not show or allege that the improvements made to Wye Hall amounted to 15% or more of its value, as required by Maryland Code, (1974, 2003 Repl. Vol), section 9–106 of the Real Property Article ("RP"), and to furnish statements of the nature or kind of work done or the kind and amount of materials furnished, as required by Md. Rule 12–302(b).

charged excessively for the work it performed. In the MCPA count, she alleged that Winchester had made material misrepresentations about the quality of its work and equipment, its methods of charging for costs, and the expertise of its subcontractors. Mrs. Brendsel sought damages of "at least $1,000,000," prejudgment and postjudgment interest, costs, attorneys' fees under the MCPA, and any other appropriate relief. She demanded a jury trial. In addition, the Brendsels' lawyer filed a request for the issuance of 13 subpoenas relating to the claims filed in Mrs. Brendsel's counterclaim.

In the days immediately before and leading up to March 4, 2004, the parties, through counsel, participated in negotiations. On March 4, the Brendsels' lawyer sent an e-mail to Winchester's lawyer asking "to confirm your agreement not to file a motion to stay the litigation in favor of arbitration at this time in exchange for [our] agreement not to file an amended counterclaim and third-party complaint." The negotiations culminated in a consent motion for continuance of the March 15 hearing ("Consent Motion"), which was filed by the parties jointly the next day, March 5, 2004.

In the Consent Motion, the parties agreed, among other things:

- there would be a limited "Discovery Period," ending on June 15, 2004, for Mrs. Brendsel to explore her claim of incorrect charges in connection with the work of certain subcontractors

- the limited discovery, depending on its outcome, could obviate the need to further pursue that claim and resolve it or could result in Mrs. Brendsel's seeking leave of court to further amend the counterclaim and to file a third party claim

- the Brendsels would not oppose Winchester's request for the entry of an interlocutory mechanic's lien, for $815,877.27, in lieu of the March 15 hearing

- at the conclusion of the limited discovery period the Brendsels could move to strike the interlocutory mechanic's lien

- "[t]his Consent Motion is not intended as a waiver of any party's right to argue for or against arbitration based on the activities engaged in before the filing of this Consent Motion."

The Consent Motion went on to state:

The parties further stipulate and agree that neither this Consent Motion nor their activities during the Discovery Period, nor the issuance of the interlocutory lien order proposed hereunder, shall prohibit or waive any party's right to proceed in arbitration, or to object thereto, to the same extent as if this Motion had not been filed and the actions proposed hereunder had not been taken.

Based on the Consent Motion, on March 8, 2004, the court entered an order ("Interlocutory Order") continuing the March 15 hearing; establishing an interlocutory mechanic's lien against the Property for $815,877.27; scheduling a status conference for June 22, 2004, in the event that the matter was not resolved before then; and establishing the rights of the parties as follows:

[The Brendsels] are granted leave of this Court to amend the Answer and Counterclaim and file a third-party complaint upon completion of the Discovery Period.... This Order shall not affect the right of [the Brendsels], at the conclusion of the Discovery Period, to move to strike this Interlocutory Lien Order and have a hearing thereon to the same extent and under the same conditions as if said hearing had been held on March 15, 2004.... Neither the Consent Motion nor the Discovery to be conducted during the Discovery Period, nor this Order shall prohibit or waive the right of any party to proceed in arbitration, or to object thereto, to the same extent as if the Consent Motion had not been filed, this Interlocutory Order had not been executed, and Discovery to be conducted in the Discovery Period had not been conducted.... Any party may argue for or against arbitration based upon activities before the filing of the Consent Motion resulting in this Order, or otherwise, except to the extent specified in the preceding paragraph[.]

On March 8, Mrs. Brendsel filed an amended counterclaim, attaching the MOU and alleging that it too was a basis for the breach of contract and MCPA claims.

In a confirmatory letter, dated March 12, 2004, counsel for Winchester stated:

[I]t is understood that Winchester will not file a demand for arbitration nor request that the proceedings in [court] be stayed pending arbitration until such time as the Discovery Period, as defined in the Consent Motion, has expired, in the interest of allowing the parties to focus upon determining the facts and hopefully resolving the disputes [that] exist between the parties.

Counsel for Winchester also suggested that "all such discovery on the defective work claims also have no effect upon any party's right to proceed in arbitration, or to object thereto."

On April 5, 2004, Winchester filed an answer to Mrs. Brendsel's amended counterclaim. It denied liability and raised nine affirmative defenses, including that the claims asserted were "subject to arbitration pursuant to the terms of the Agreement between the parties."

Mrs. Brendsel noted the depositions of Timothy Fluharty and Thomas Speed, two subcontractors on the renovation project. The depositions took place on June 10, 2004. Counsel for Winchester attended the depositions. Winchester did not initiate any discovery, and no other discovery was conducted.

On June 16, 2004, the day after the close of the agreed upon Discovery Period, Mrs. Brendsel filed a motion for partial summary judgment "as to liability on one of the breaches of contract alleged in her counterclaim." She asserted that, on the undisputed facts as ascertained through discovery, Winchester was liable for breach of the Agreement by allowing subcontractors to "overbill[ ]" for their work and then passing the "overcharges" along to the Brendsels with Winchester's "own markup for profit." She attached as supporting exhibits the Agreement and excerpts from the Fluharty and Speed depositions. She also requested a hearing.

Six days later, on June 22, 2004, Winchester filed a "Petition to Compel Arbitration and For Stay of Proceedings," under Maryland Code (1973, 2002 Repl.Vol.), sections 3–207 and 3–209 of the Courts and Judicial Proceedings Article. It asserted that the arbitration clause in the Agreement governed all of the parties' claims and disputes; that the Interlocutory Order had preserved Winchester's right to proceed in arbitration; and that, by means of her motion for partial summary judgment, Mrs. Brendsel was seeking a ruling on the merits of a "claim[ ] or dispute[ ]" that was subject to arbitration under the Agreement and hence was refusing to arbitrate the claim.[5]

The Brendsels filed a timely opposition to the petition to compel arbitration and stay of proceedings. In effect, the Brendsels conceded that the parties' disputes under the Agreement were subject to arbitration. They argued, however, that Winchester had waived its contractual right to arbitrate by "su[ing] for a mechanic's lien in court, rather than demand[ing] arbitration in accordance with the contract" and because other factors militated in support of a finding of waiver. These factors were that Winchester had delayed initiating arbitration, unreasonably; and that the Brendsels had been prejudiced by the delay because they devoted time and resources answering the petition for the mechanic's lien, asserting a counterclaim, preparing subpoenas, filing a motion for partial summary judgment, and participating in the status conference. The Brendsels further argued that Winchester should not be allowed to avoid a ruling on the dispositive motion for partial summary judgment by "belatedly seeking a more favorable forum in arbitration."[6]

---

5. Winchester also filed a motion to extend its time for responding to Mrs. Brendsel's motion for partial summary judgment until fifteen days after the court ruled on its petition to compel arbitration and stay proceedings. On July 7, 2004, the parties filed a stipulation that Winchester would have until July 9, 2004 to respond to Mrs. Brendsel's motion for partial summary judgment.

6. In support of these arguments, the Brendsels attached a September 16, 2004 letter from Winchester's counsel to theirs that included a copy of Winchester's Final Payment Reconciliation, as evidence of the dis-

On July 9, 2004, Winchester filed an opposition to Mrs. Brendsel's motion for partial summary judgment. (Winchester explained in the opposition that, by filing it, Winchester was not withdrawing its position that all the claims and disputes respecting the Agreement were subject to arbitration; rather, it was filing an opposition because the court had directed it to do so.)

On July 15, 2004, Winchester filed a reply memorandum in support of its petition to compel arbitration and stay proceedings. It argued: 1) it did not unreasonably delay demanding arbitration because the Tolling Agreement suspended all deadlines in the Agreement and the MOU, including the time for filing arbitration and that, in any event, the parties had agreed that Winchester would not file a demand for arbitration until the Discovery Period expired; 2) filing the mechanic's lien petition was not conduct inconsistent with a contractual right to arbitrate, and therefore did not support a finding that Winchester intended to waive its arbitration right; 3) under the circumstances, Winchester demanded arbitration in a reasonable time; [7] and 4) the Brendsels were not prejudiced by any delay in Winchester's demanding arbitration.[8]

---

putes that arose between the parties regarding the quality of Winchester's work and its billing practices; an affidavit of Donald Rea, counsel to the Brendsels, as evidence that the parties discussed their disputes during the fall of 2003 but that the issue of arbitration "did not proceed beyond the discussion phase until Winchester [ ] filed [the petition for a mechanic's lien] in court;" and the December 10, 2004 letter from Brendsels' counsel to Winchester's counsel, alleging that Winchester owed the Brendsels money because of the actual damage caused by Winchester's defective work.

7. Winchester pointed out that, under the AAA Rule, the fee to file Winchester's claim would be $7,500, and urged that it therefore would not be reasonable for Winchester to institute arbitration proceedings until after its petition to compel arbitration was granted.

8. In support, Winchester attached several of the aforementioned letters of correspondence between the parties' counsel in the fall of 2003 and early 2004, including a "Summary of Communications between the [Brendsels] and Winchester from the Date of Termination through March 16, 2004"; a copy of the current AAA Rules; and a copy of the

Mrs. Brendsel filed a timely reply memorandum in support of her motion for partial summary judgment.

On July 20, 2004, the court held a hearing on all open motions. It first heard argument on the motion to compel arbitration and to stay proceedings. At the conclusion of the argument on that motion, the court found on the "totality of the circumstances" that Winchester had not waived its right to arbitrate under the Agreement, and granted the motion to compel arbitration and to stay proceedings. Because of that ruling, it did not address the motion for partial summary judgment.

The court entered an order later that day memorializing its ruling. The order granted the petition; compelled the parties to arbitrate the contractual disputes underlying the mechanic's lien action, including the disputes asserted in the counterclaim; stayed the mechanic's lien action, "other than a request for a probable cause hearing and proceedings and order thereon, if any such request is filed"; and stated that the court was retaining jurisdiction pending the outcome of the arbitration proceedings.

The Brendsels noted a timely appeal from the July 20, 2004 order.

## DISCUSSION

The Brendsels contend the circuit court erred in granting Winchester's petition to compel arbitration and stay proceedings, for two reasons. First, they argue that, by filing the mechanic's lien petition, Winchester "resort[ed] to litigation in the first instance," and thus " 'in essence refus[ed] to arbitrate and [was] itself in default of the arbitration agreement[.]' " Brief at 9 (quoting *Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 114, 468 A.2d 91 (1983)).

Second, they argue that evidence of other factors, in addition to Winchester's initiation of litigation, required a finding

AAA Rules in effect in 1999, when the parties entered into the Agreement.

that Winchester intended to waive its contractual arbitration right. That evidence was that Winchester delayed unreasonably in demanding arbitration; the parties engaged in discovery; the Brendsels suffered prejudice due to both of the above; and Winchester, by demanding arbitration, merely was shopping for a more favorable forum.

Winchester counters that the predicate to the Brendsels' first argument is flawed because it assumes, incorrectly, that filing a mechanic's lien petition is inconsistent with maintaining the contractual right to arbitrate the underlying dispute. It asserts that a mechanic's lien action is merely an ancillary enforcement proceeding. Accordingly, Winchester argues, the act of filing the mechanic's lien petition was not tantamount to refusing to arbitrate—thereby waiving the contractual arbitration right.

In response to the Brendsels' second argument, Winchester points out that the waiver determination was a factual finding that only will be set aside for clear error and that, here, there is factual support in the record for the court's finding that Winchester did not intend to waive its contractual right to arbitrate. Furthermore, Winchester argues, the facts viewed favorably to the circuit court's decision do not show that Winchester delayed unreasonably in demanding arbitration; that it demanded arbitration when it did for improper reasons; or that the Brendsels suffered any prejudice.

### (i)

 Under Maryland law, the right to arbitrate is a matter of contract law and therefore is governed by contract law principles. *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship,* 346 Md. 122, 127, 695 A.2d 153 (1997).

 A party to a contract may waive a right under the contract; accordingly, a party to a contract that confers a right to arbitrate may waive that right. *Chas. J. Frank, Inc. v. Assoc. Jewish Charities of Baltimore, Inc.,* 294 Md. 443, 448, 450 A.2d 1304 (1982); *Commonwealth Equity Services, Inc. v. Messick,* 152 Md.App. 381, 393, 831 A.2d 1144 (2003).

Waiver is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such a right." *Frank, supra,* 294 Md. at 449, 450 A.2d 1304; *The Redemptorists v. Coulthard Services, Inc.,* 145 Md.App. 116, 136, 801 A.2d 1104 (2002). "[A]cts relied upon as constituting waiver of the provisions of a contract must be inconsistent with an intention to insist upon enforcing such provisions.' " *Frank, supra,* 294 Md. at 449, 450 A.2d 1304 (quoting *BarGale Indus., Inc. v. Robert Realty Co.,* 275 Md. 638, 643, 343 A.2d 529 (1975)). The Maryland Uniform Arbitration Act "embodies a 'legislative policy in favor of the enforcement of agreements to arbitrate.' " *Harris v. Bridgford,* 153 Md.App. 193, 201, 835 A.2d 253 (2003) (quoting *Allstate Ins. Co. v. Stinebaugh,* 374 Md. 631, 641, 824 A.2d 87 (2003)); *Gold Coast Mall, supra,* 298 Md. at 103, 468 A.2d 91. For that reason, the intent to waive a right to arbitrate "must be clearly established and will not be inferred from equivocal acts or language." *Frank, supra,* 294 Md. at 449, 450 A.2d 1304; *see also RTKL Assoc., Inc. v. Four Villages Ltd. P'ship,* 95 Md.App. 135, 143, 620 A.2d 351 (1993).

Whether a party has waived his contractual right to arbitrate "involves a matter of intent that ordinarily turns on the factual circumstances of each case." *Frank, supra,* 294 Md. at 449, 450 A.2d 1304; *Harris supra,* 153 Md.App. at 206, 835 A.2d 253. "[T]here is no 'bright-line' test for determining waiver, . . . the determination of what conduct constitute[s] an 'intentional relinquishment' of one's right to arbitrate is highly factually dependent." *Harris, supra,* 153 Md.App. at 206, 835 A.2d 253 (quoting *The Redemptorists, supra,* 145 Md.App. at 137, 801 A.2d 1104). A circuit court's decision that a party has or has not waived his right to arbitrate is a factual finding that will not be disturbed on appeal unless it is clearly erroneous. *Harris, supra,* 153 Md.App. at 208, 835 A.2d 253; *The Redemptorists, supra,* 145 Md.App. at 137, 801 A.2d 1104.

### (ii)

The Court of Appeals has decided four cases, one very recently, addressing waiver of a contractual right to arbitra-

tion by participating in litigation. A dominant theme running through the cases is that conduct constituting a waiver of the contractual right of arbitration must be so inconsistent with the continued assertion of that right as to reflect an intention to repudiate it.

In *Charles J. Frank, Inc. v. Assoc. Jewish Charities of Baltimore, Inc., supra,* decided in 1982, the Court held that a party did not waive his right to arbitrate certain arbitrable disputes under a contract by litigating a single, unrelated arbitrable dispute under the same contract. A contractor that was sued by a subcontractor for payment for extra work filed a third party indemnity claim against the building's owner. Although the dispute was arbitrable under the contract between the contractor and the owner, neither the contractor nor the owner demanded arbitration. Ultimately, the subcontractor, contractor, and owner settled the extra work claims, including the third-party claim.

Subsequently, the contractor demanded payment of the balance due for work under the contract and the owner refused, citing faulty work that was unrelated to the extra work performed by the subcontractor. When the contractor initiated arbitration before the AAA, the owner filed in the circuit court a petition to stay arbitration, arguing that the contractor had waived its right to arbitrate the payment dispute by litigating the extra work claim. The circuit court granted the petition and stayed arbitration.

The Court of Appeals took the case directly and reversed. It held that, although the contractor had waived its right to arbitrate the issues raised and/or decided in the extra work case by participating in that case, both as a defendant and a third-party plaintiff, it had not waived its right to arbitrate other unrelated disputes under the contract. The Court explained that the contractor's participation in the extra work litigation was "not necessarily inconsistent with an intention to enforce the right to arbitrate unrelated issues arising under the same contract[,]" and therefore was "too equivocal to support an inference of an intentional relinquishment of the

right to arbitrate issues other than those raised and/or decided in the judicial proceeding." 294 Md. at 454, 450 A.2d 1304.

The next year, in *Gold Coast Mall v. Larmar Corp., supra,* the Court held that a party to a contract containing an arbitration clause did not waive its right to arbitrate by not initiating arbitration of a claim against it by the other party. The contract in question was a lease providing that, in the event of a dispute, an arbitrator was to be appointed by each party within 15 days after a 60–day negotiating period. The lease did not place the obligation to initiate arbitration on either party, however. When a dispute arose about the proper method for calculating rent under the lease, the landlord sued the tenant in a declaratory judgment action. The tenant filed a motion for preliminary objection, stating that the lease required arbitration of the dispute, and thereafter filed a petition to compel arbitration. The landlord filed a motion for summary judgment on the merits of the meaning of the relevant lease language.

The circuit court ruled that, by not appointing an arbitrator within the time period specified by the lease after the dispute arose, the tenant waived its right to arbitrate. The court then granted summary judgment in favor of the landlord on the merits. This Court affirmed the judgment on the sole ground that the tenant had waived its contractual right of arbitration.

The Court of Appeals reversed. It reasoned that, because the dispute amounted to a claim *against* the tenant, not *by* it, the tenant did not have any responsibility to initiate arbitration; therefore, the tenant's failure to appoint an arbitrator was not a refusal to arbitrate that evidenced an intent to waive the arbitration right. Moreover, the tenant's conduct during the lawsuit—filing a motion raising preliminary objection on the ground of arbitration and not filing an answer directed to the merits of the dispute—was not "inconsistent with an intention to insist upon enforcing the right to arbitrate" and accordingly was not a waiver of that right. 298 Md. at 115, 468 A.2d 91.

By way of contrast, the Court pointed out that a party "who sues instead of seeking arbitration [of a claim] is in essence

refusing to arbitrate" by acting "in default of the arbitration agreement." *Id.* at 114, 468 A.2d 91. Thus, the landlord's conduct in seeking relief in court on its claim against the tenant instead of initiating arbitration of that claim constituted a refusal to arbitrate that claim. It was implicit in this observation that the landlord had waived its right to arbitrate its claim against the tenant by filing suit on the merits of the claim instead of seeking arbitration; waiver by the landlord was not at issue, however.

In *NSC Contractors, Inc. v. Borders*, 317 Md. 394, 564 A.2d 408 (1989), the parties to a construction contract engaged in litigation to resolve their breach of contract dispute. Neither party demanded arbitration and both parties acknowledged that their conduct constituted a waiver of their arbitration right. The Court of Appeals, in the course of addressing other issues, observed that "[t]his use of litigation to resolve the dispute as to the proper amount of money withheld resulted in a waiver of arbitration." 317 Md. at 403, 564 A.2d 408. It restated the general principle to be: "Where the parties seek to resolve certain arbitrable matters through litigation, the right to arbitration is waived as to those matters necessarily resolved in the proceedings." *Id.* at 402, 564 A.2d 408 (citing *Frank, supra,* 294 Md. at 450, 450 A.2d 1304).

In *Walther v. Sovereign Bank*, 386 Md. 412, 872 A.2d 735 (2005), the Court of Appeals held that a party to a contract did not waive its right to arbitrate a dispute by filing a petition to compel arbitration or, in the alternative, to dismiss on substantive grounds, a lawsuit brought by the other party. In documents executed in connection with a second mortgage loan, the lender and borrower agreed that disputes about the transaction would be resolved by arbitration. Several years later, the borrower filed a class action lawsuit against the lender, alleging that he had been charged illegal fees.[9] The

---

9. The note had been assigned by the lender in the meantime and the suit actually was brought against the lender's assignee. We shall refer to the assignee as the lender for ease of discussion.

lender filed a petition to compel arbitration or, in the alternative, to dismiss on the ground of limitations and failure to give notice. The borrower responded that, by seeking dismissal of the claim on substantive grounds, the lender waived its right of arbitration. The circuit court granted the petition and this Court affirmed.

The Court of Appeals affirmed, holding that the lender's response to the complaint "was not a full-course plunge into the courts, but rather an effort to petition the court to compel the parties to adhere to the terms of their agreement to arbitrate[.]" 386 Md. at 448, 872 A.2d 735. The lender did not obtain a final judgment "on any issue that might be subject to arbitration," nor did it "attain[ ] . . . a determination of any of the issues in dispute." *Id.* at 449, 872 A.2d 735. Emphasizing that it was the borrower, not the lender, who had acted in opposition to the arbitration agreement, by seeking court resolution on the merits of a clearly arbitrable claim, the Court concluded·that the lender's motion was not "a repudiation of the . . . arbitration provision" but was an "an affirmative step" toward accomplishing arbitration. *Id.* (emphasis omitted).

In the two decades between the decisions of the Court of Appeals in *Frank, supra,* and *Walther, supra,* this Court has on several occasions considered the degree of participation in litigation by a defendant that will effect a waiver of the right to arbitrate an otherwise arbitrable dispute. The analyses in these cases also has focused on the consistency *vel non* between the defendant's litigation conduct and his assertion of his right to arbitrate—and whether the litigation conduct was tantamount to a refusal to arbitrate.

In *The Redemptorists,* supra, (cited with approval in *Walther, supra,* at 448, 872 A.2d 735), we affirmed a decision that a defendant did not waive its right to arbitration when, in response to a breach of contract action brought on arbitrable claims, and before moving to compel arbitration, it filed a motion for more definite statement and to dismiss for lack of jurisdiction. We noted that the motions did not address the

merits of the claims, were limited to procedural flaws in the complaint that could have disposed of the case on a nonsubstantive ground, and did not amount to "full fledged" engagement in the litigation process to resolve the arbitrable dispute. 145 Md.App. at 143, 801 A.2d 1104.

Holding that the circuit court's finding of non-waiver was not clearly erroneous, we distinguished *RTKL, supra,* in which we affirmed a finding that two defendants in construction litigation waived their contractual right to arbitration by filing cross-claims, depositions, and other discovery. *See also Messick, supra,* 152 Md.App. at 398–99, 831 A.2d 1144 (affirming a circuit court's ruling that two defendants in construction litigation waived their contractual right to arbitrate by filing answers, initiating and participating in discovery, and not filing motions to compel arbitration until a scheduling order was in place); *Gladwynne Co. v. Mayor and City Council of Baltimore,* 147 Md.App. 149, 198, 807 A.2d 1141 (2002) (holding that a defendant that answered complaint, filed a counterclaim, participated in discovery, and did not move to compel arbitration waived the right to arbitrate).

In *Harris v. Bridgford, supra,* 153 Md.App. 193, 835 A.2d 253, this Court addressed for the first time whether a plaintiff necessarily waived his right of contractual arbitration by filing a breach of contract action on the merits of an arbitrable dispute. The case involved a fee dispute between a lawyer and his former client. The parties commenced arbitration under the Maryland State Bar Association's regulations for binding arbitration of fee disputes. The former client asked to withdraw from the arbitration, however, and was permitted to do so, over the lawyer's objection. The lawyer then sued the former client to recover the unpaid fees. When the former client counterclaimed for breach of contract and fraud, the lawyer filed a petition to compel arbitration. The former client opposed the petition on the ground that the lawyer had waived his right to arbitration by bringing suit, thus placing the dispute in the hands of the court to decide. The circuit court found the lawyer had not waived his right to arbitration and granted the petition.

The former client appealed. Relying on the Court of Appeals's observation in *Gold Coast Mall, supra,* 298 Md. at 114, 468 A.2d 91, that a "party asserting a claim who sues instead of seeking arbitration is in essence refusing to arbitrate and is itself in default of the arbitration agreement[,]" he urged this Court to adopt a *per se* rule that a party's act of filing suit to recover on a claim automatically effects a waiver of the right to arbitrate the same claim.

In affirming the court's decision to grant the petition to compel arbitration, we declined to adopt such a hard and fast rule. To do so, we stated, would be the "antithesis of the proposition that a knowing and intentional waiver of arbitration is generally a question of fact and ordinarily turns on the factual circumstances of each case." 153 Md.App. at 206, 835 A.2d 253. We observed, however, that "the filing of a suit is a significant act in a waiver calculus, and in some instances it perhaps could be dispositive." *Id.* We held that, under the totality of the circumstances in the case, including that the lawyer had participated in the aborted arbitration and had objected to its termination, the court's finding that the lawyer did not intend to waive his right of arbitration by filing suit against the former client to recover the unpaid fee was not clearly erroneous. *Id.* at 208, 835 A.2d 253.

### (iii)

The principles established in the Maryland appellate cases on waiver of the right to contractual arbitration do not support the Brendsels' first argument, that Winchester necessarily waived its right of arbitration by filing the mechanic's lien petition.

A mechanic's lien is a statutorily created remedy against improved property on which work has been done or materials have been supplied. *Wolf Org., Inc. v. Oles,* 119 Md.App. 357, 366, 705 A.2d 40 (1998); *Kaufman v. Miller,* 75 Md.App. 545, 552, 542 A.2d 391 (1988); RP §§ 9–101 *et seq.* ("the Mechanic's Lien Law"). An action for a mechanic's lien is an *in rem* proceeding for collecting a debt against the

particular property described in the lien claim. *Scott & Wimbrow, Inc. v. Wisterco Investments, Inc.,* 36 Md.App. 274, 275, 373 A.2d 965 (1977); *see also Wolf, supra,* 119 Md.App. at 366, 705 A.2d 40 (observing that the mechanic's lien proceeding is *in rem* ). By contrast, a judgment on a debt in an *in personam* proceeding subjects all of the property of the judgment debtor to the claim. *Scott & Wimbrow, Inc., supra,* 36 Md.App. at 275, 373 A.2d 965.

A mechanic's lien thus "is only a means of receiving payment[;] it is not a claim upon which the lien is founded." *Hill v. Parkway Indus. Center,* 49 Md.App. 676, 681, 435 A.2d 472 (1981). The Court of Appeals made that distinction plain in *Frederick Contractors, Inc. v. Bel Pre Medical Center, Inc.,* 274 Md. 307, 316, 334 A.2d 526 (1975). There, a payment dispute arose under a construction contract that required arbitration of disputes. After the contractor filed a petition to establish a mechanic's lien against the owner's property, the owner made a demand for arbitration of the dispute under the contract. The Court held that the effect of the owner's demand for arbitration was to stay the mechanic's lien action until the arbitration was concluded (or the demand was withdrawn). The Court explained:

> [W]e conclude that [the owner's] demand for arbitration should have had the effect of staying the foreclosure proceeding until an award is returned from the arbitration, when any award made in [the contractor's] favor may be enforced by going forward with the proceeding to foreclose the [mechanic's lien]. . . . We have no hesitancy in holding that while [the owner], by demanding arbitration, should have been allowed to stay the proceedings in circuit court, such a stay will remain effective only until arbitration is concluded or [the owner's] demand is withdrawn. In such an event, an award in [the contractor's] favor may be enforced or alternatively [its] claim may be satisfied by the foreclosure of the lien. *While the parties may have bound themselves by the general conditions of the contract to accept the resolution of disputes by arbitration, they in no*

*way limited themselves in the manner by which payment of an award may be enforced.*

274 Md. at 316, 334 A.2d 526 (footnote omitted) (emphasis added). *See also Harry Berenter, Inc. v. Berman,* 258 Md. 290, 296, 265 A.2d 759 (1970) (observing that the statutory creation of mechanic's lien was for the purpose of providing for the enforcement of a contract for work done and materials furnished).

Until 1976, the mechanic's lien law provided that a lien attached to property upon the claimant's filing of the petition to establish the lien. In *Barry Properties, Inc. v. Fick Bros. Roofing Co.,* 277 Md. 15, 35, 353 A.2d 222 (1976), the Court of Appeals held that that aspect of the mechanic's lien law was an unconstitutional taking without due process of law. Statutory revisions were made in immediate response to the *Barry* decision. The major change was enactment of the interlocutory lien/probable cause procedure in RP section 9–106, which cured the due process deficiency. *York Roofing, Inc. v. Adcock,* 333 Md. 158, 165, 634 A.2d 39 (1993).

■■■ As this Court explained in *Caretti, Inc. v. Colonnade Ltd. P'ship,* 104 Md.App. 131, 135, 655 A.2d 64, *cert. denied,* 339 Md. 641, 664 A.2d 885 (1995), the change meant

that the claimant does not get his lien until the court establishes it, and the court may not establish it until, after considering any response by the owner to the claimant's petition, the court finds at least probable cause to believe that the claimant is entitled to a lien. That, in turn, may require consideration not only of whether the claimant has satisfied the statutory procedural prerequisites but of the nature and quality of the work allegedly performed or materials furnished, relevant contractual provisions, payments made to the claimant, and any defenses asserted to the claim.

*See also Reisterstown Lumber Co. v. Royer,* 91 Md.App. 746, 759, 605 A.2d 980 (1992) (explaining that probable cause to issue an interlocutory mechanic's lien exists when the facts and circumstances, taken as a whole, would lead a reasonably

cautious person to believe that the petitioner is entitled to an interlocutory mechanic's lien); *Tyson v. Masten Lumber & Supply, Inc.*, 44 Md.App. 293, 297, 408 A.2d 1051 (1979) (noting that, when evidence, affidavits, and pleadings show a genuine dispute of material fact, the court should pass an interlocutory order setting out the parameters of the lien and setting the matter for the trial of all issues necessary to a final adjudication).

In *Caretti, supra,* this Court discussed the interplay between an arbitration proceeding to resolve a contract dispute and obtain an award for the disputed amount and an action to establish and enforce a mechanic's lien that can be foreclosed upon to effect recovery of the award, if it is made.

Judge Wilner, writing for the Court, explained that, when a construction contract calls for arbitration of disputes and a contractor files a petition to establish a mechanic's lien, the court may hold a probable cause hearing, establish an interlocutory lien, and then stay trial on the merits of the mechanic's lien action in favor of arbitration. The interlocutory lien gives the contractor priority to foreclose against the property, pending arbitration of the contract dispute. The probable cause determination that precedes the creation of an interlocutory lien "is far less than adjudicating the merits of the dispute[,]" however. 104 Md.App. at 138, 655 A.2d 64. It is a decision about the likelihood that the contractor eventually will prevail on the merits of the dispute, but it is not itself a decision on the merits.

The linchpin of the Brendsels' argument that Winchester necessarily intended to waive its right to arbitration under the Agreement and the MOU by filing the mechanic's lien petition is that filing a mechanic's lien petition constitutes a request for the court to resolve the parties' underlying contractual dispute; and that conduct is inconsistent with arbitration of the underlying contractual dispute, and therefore is a refusal to arbitrate. In oral argument before this Court, counsel for the Brendsels asserted that a mechanic's lien action and a breach of contract claim on the underlying contract are one and the

same, and that, by filing the mechanic's lien petition, Winchester had chosen not to pursue arbitration.

As our discussion reflects, the Mechanic's Lien Law and the cases interpreting it and analyzing the nature of a mechanic's lien do not support a conclusion that merely filing a mechanic's lien petition is conduct inconsistent with an intent to arbitrate the underlying contractual dispute and hence constitutes a refusal to arbitrate. By filing a mechanic's lien petition and obtaining an interlocutory lien against the property, a contractor ensures that the owner's property is available as a collection resource, in the event that the contractor prevails of the merits of his contract dispute with the owner.

The probable cause determination that precedes a court decision to impose an interlocutory lien is not a decision on the merits of the underlying contractual dispute. The filing of the proceeding and the imposition of an interlocutory lien do not foreclose arbitration as the mode of deciding the underlying contractual dispute. A contractor can pursue a mechanic's lien proceeding to make the owner's property available as a collection resource and obtain an interlocutory lien without seeking court resolution of the underlying claim.

Accordingly, merely by filing a mechanic's lien petition, Winchester did not evidence an intent to forego arbitration of the merits of the parties' contractual dispute, and hence did not waive its right to arbitration.

### (iv)

We thus turn to the Brendsels' second argument, that the circuit court clearly erred in finding that Winchester did not waive its right to arbitrate the parties' contractual disputes.

The pertinent basic facts were not in dispute. The Agreement and MOU were terminated by convenience on May 23, 2003. Starting long before then, the parties were disputing the amount of money owed for work performed. On August 13, 2003, Winchester submitted its final accounting.

Lawyers for the parties communicated for several months. In the meantime, the Brendsels accused Winchester of double billing for work performed by certain subcontractors.

Winchester brought the mechanic's lien action on November 14, 2003, slightly less than 180 days after the termination date. Under the Mechanic's Lien Law, such a proceeding must be filed within 180 days of the work being completed or the materials furnished. RP § 9–105. The tolling agreement between the parties addressed statutes of limitations generally, but not the 180–day mechanic's lien filing deadline.

On December 10, 2003, the Brendsels responded to Winchester's final accounting by asserting that they owed nothing and Winchester owed them money. In an amended mechanic's lien petition filed on January 9, 2004, Winchester alleged that the Agreement contained an arbitration provision, asked the court to establish an interlocutory lien, and requested other relief, including a stay "pending the outcome of an arbitration proceeding between the parties." That request made it clear that Winchester was seeking to have the merits of the parties' contractual dispute resolved by arbitration, not by the court.

On March 4, 2004, Mrs. Brendsel filed an answer to the petition and a counterclaim for breach of contract and violations of the MCPA. The counterclaim made it plain that Mrs. Brendsel was seeking to have the merits of the parties' contractual dispute decided by the court, not in an arbitration proceeding, as the Agreement provided.

The interlocutory lien was imposed the next day, March 5, by consent, as part of a negotiated agreement. The parties agreed to the imposition of the lien, its amount, and that, for a defined period of time, ending on June 15, 2004, Mrs. Brendsel could engage in discovery to obtain information pertinent to her double billing allegation. The agreement expressly acknowledged that neither the Consent Motion, the parties' activities during the Discovery Period, nor the imposition of the interlocutory lien, would operate to waive Winchester's right to proceed in arbitration. Nor would any of them waive

the Brendsels' right to maintain that Winchester had waived its right of arbitration.

The motion for partial summary judgment was filed the day after the Discovery Period ended. Winchester filed its petition to compel arbitration six days later.

These basic facts serve as support in the record for the circuit court's finding that Winchester did not intend to waive its right of arbitration. From the day the Agreement was terminated until the day the mechanic's lien action was filed (and thereafter), the parties, through counsel, were engaged in ongoing discussions aimed at resolving their disputes by good faith negotiation and settlement. If Winchester had not filed the mechanic's lien petition when it did, it would have risked losing that remedy, by missing the 180–day deadline. The parties continued to negotiate after the mechanic's lien petition was filed. Indeed, the continued negotiations resulted in the Brendsels obtaining a benefit: discovery that otherwise would not have been available to them in the arbitration forum.

The amended mechanic's lien petition stated expressly that Winchester was seeking to enforce its arbitration right under the contract. It made clear that Winchester was not engaging itself in the litigation process to resolve the merits of the contractual dispute, but, rather, to obtain an interlocutory lien that would establish its priority for recovery against the Property before and during arbitration of the merits of the contractual dispute. Winchester did not seek, by motion or any other means, to have the court resolve the merits of the contractual dispute. In response to the counterclaim, which *did* seek a court resolution on the merits, Winchester raised arbitration as an affirmative defense.

The specific points the Brendsels advance to support their clear error argument are not persuasive. They maintain that Winchester unreasonably delayed petitioning to compel arbitration. Yet, as we have explained, good faith negotiations were ongoing, before and after the mechanic's lien petition was filed; Winchester asked for a stay pending arbitration in

its amended complaint on January 9, 2004; raised arbitration as a defense to the amended counterclaim on April 5, 2004; and petitioned to compel arbitration within six days of the partial motion for summary judgment being filed (and after the Discovery Period hiatus that was established for the Brendsels' benefit).

The Brendsels also maintain that Winchester sought arbitration merely for a change in forum, to avoid a negative ruling on the partial summary judgment motion. Again, the petition to compel arbitration was Winchester's third request of the court to compel arbitration. The first two requests preceded the motion. Also, the motion was filed the day after the Discovery Period, an accommodation that benefited the Brendsels and followed entry of the Interlocutory Order that acknowledged Winchester's position that the underlying dispute was to be resolved by arbitration. Nothing in the timing of these events suggests that Winchester filed its petition to compel arbitration to escape an unfavorable ruling.

The Brendsels argue that the fact that discovery was undertaken shows that Winchester intended to waive arbitration. There is no merit at all to this argument. The Interlocutory Order made plain that, by agreeing to a period of limited discovery for the Brendsels, Winchester was not evidencing an intent to waive arbitration. It is noteworthy also that Winchester did not initiate any discovery itself. The circumstances in this case are entirely unlike those in *Messick, supra,* and *RTKL, supra,* in which parties that pursued extensive discovery and fully engaged in the litigation process were found to have waived their arbitration rights.

Finally, the Brendsels claim they suffered prejudice because they had to devote considerable time and resources to defending themselves in the mechanic's lien proceeding. These assertions likewise do not undercut the circuit court's finding that Winchester did not intend to waive arbitration. As we have explained, Winchester had the right to seek an interlocutory mechanic's lien and then pursue arbitration of the underlying dispute; and those courses of conduct were not mutually exclusive or inconsistent. It follows that there was no ex-

traordinary burden to the Brendsels in defending the mechanic's lien claim. The additional time and effort the Brendsels exerted in response to the mechanic's lien petition was of their own making—in pursuing a court resolution of the merits of the contractual dispute by means of a counterclaim and discovery to support that claim. These facts did not evidence any intention by Winchester to waive its right to arbitration, however.[10]

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANTS.**

---

10. In footnotes in their opening brief, and in the text of their reply brief, the Brendsels argue that the circuit court erred in compelling Mr. Brendsel to arbitrate because he is not a party to the Agreement by virtue of his not having signed it. The Brendsels further argue that this issue was raised below, and thus was preserved for appeal, because a copy of the Agreement was attached to the papers filed in the mechanic's lien proceeding.

Merely attaching a copy of the Agreement to papers filed in the mechanic's lien proceeding did not preserve the issue for appeal. *See* Md. Rule 8–131(a). Even if this issue were preserved, however, we would find it to be without merit. Although Mr. Brendsel did not sign the Agreement, he is the owner of the Property, which was being renovated and restored under the Agreement, and Winchester named Mr. Brendsel as a party to the mechanic's lien petition. The Brendsels never argued to the circuit court that Winchester should not have named Mr. Brendsel in the mechanic's lien petition. Accordingly, the trial court did not err in including Mr. Brendsel in the order compelling the parties to arbitrate.